196 P.3d 306

**Darrell N. KAPUWAI, Claimant–Appellant,**

v.

**CITY AND COUNTY OF HONOLULU, DEPARTMENT OF PARKS AND RECREATION, Employer–Appellee, Self–Insured.**

**No. 27915.**

Intermediate Court of Appeals of Hawaiʻi.

Nov. 12, 2008.

As Corrected Dec. 8, 2008.

Herbert R. Takahashi, Danny J. Vasconcellos, Rebecca K. Covert (Takahashi Vasconcellos & Covert), Honolulu, on the briefs, for Claimant–Appellant.

Carrie K.S. Okinaga, Corporation Counsel, Florencio C. Baguio, Jr., Deputy Corporation Counsel, City & County of Honolulu, on the briefs, for Employer–Appellee, Self–Insured.

FOLEY, Presiding Judge, NAKAMURA, and LEONARD, JJ.

Opinion of the Court by NAKAMURA, J.

In this workers' compensation case, Claimant–Appellant Darrell N. Kapuwai (Kapuwai) sustained a work-related injury to his right great toe, a body part covered by the schedule of awards for permanent partial disability (PPD) set forth in Hawaii Revised Statutes (HRS) § 386–32(a) (Supp.2007). The injury affected Kapuwai's ability to walk and interfered with his daily living activities. The Labor and Industrial Relations Appeals Board (LIRAB) awarded PPD benefits to Kapuwai based on the impairment of his whole person; it did not determine what the PPD award would have been if based on the impairment of Kapuwai's great toe under the statutory schedule. We conclude that Kapuwai is entitled to a PPD award based on the impairment of his great toe if that exceeds an

award based on the impairment of his whole person. We therefore vacate the LIRAB's decision and remand the case for a determination of a PPD award based on the impairment of Kapuwai's great toe as requested by Kapuwai.

Because we are remanding the case for further proceedings, we do not decide Kapuwai's claim that the LIRAB erred in denying his request to assess one-half of his attorney's fees and costs against his employer pursuant to HRS § 386-93(b) (Supp.2007). That statute provides for the assessment of attorney's fees and costs against the employer, if the employer appeals to the LIRAB or the appellate court and "loses." However, we provide guidance on how to apply HRS § 386-93(b) to assist the LIRAB on remand.

## BACKGROUND

Kapuwai was employed by Employer–Appellee City and County of Honolulu, Department of Parks and Recreation, (the City) as a mason. He developed a bunion and calluses on his right great toe which were aggravated by wearing steel-toed shoes at work. On November 23, 2001, Kapuwai underwent surgery on his right foot that consisted of metatarsal osteotomy and distal phalangeal exostectomy. The surgery was not successful in alleviating the pain and sensitivity Kapuwai experienced in his right great toe. Kapuwai walked with a mild limp, had difficulty going up and down stairs, and had problems with balance. He gave up driving because he experienced twitching under his toe when stepping on the accelerator. The surgery left a scar and a flexion deformity of his right great toe.

The City accepted liability for Kapuwai's injury on October 28, 2002, and on December 1, 2002, the Director of the Department of Labor and Industrial Relations (the Director) ordered the City to pay for Kapuwai's necessary medical expenses as well as $5,421.25 in temporary total disability benefits.

In December 2003, Kapuwai was evaluated by Dr. Wayne Nadamoto for permanent impairment. Dr. Nadamoto used the Fifth Edition of the American Medical Association *Guides to the Evaluation of Permanent Im-* *pairment* (AMA Guides) in rating Kapuwai's impairment. Dr. Nadamoto applied the gait-derangement method rather that the range-of-motion method for assessing impairment under the Fifth Edition of the AMA Guides. Based on the gait-derangement method, Dr. Nadamoto rated Kapuwai's impairment as a 7 percent PPD of the whole person.

A hearing was held before the Director on the issues of permanent disability and disfigurement. The Director credited Dr. Nadamoto's evaluation that Kapuwai suffered a 7 percent whole person disability. The Director found that "[t]his percentage should properly be converted to an award for the great toe only as that was the site of the injury." The Director used the Third Edition (Revised) of the AMA Guides to convert Dr. Nadamoto's 7 percent whole person disability rating to a 96 percent PPD of the right great toe, resulting in a PPD award of $19,954.56. The Director also ordered the City to pay Kapuwai $800.00 for disfigurement, to pay additional temporary total disability benefits, and to reimburse Kapuwai for the cost of Dr. Nadamoto's evaluation.

The City appealed the Director's decision to the LIRAB on July 13, 2004. The LIRAB issued a pretrial order identifying the issues on appeal as:

1. What is the extent of permanent disability resulting from [Kapuwai's] work injury . . . ; [and]

2. What is the extent of disfigurement resulting from [Kapuwai's] work injury . . . .

At the City's request, Dr. S.Y. Tan conducted an independent medical examination of Kapuwai. Dr. Tan prepared a report and testified at the trial held before the LIRAB on the City's appeal. Dr. Tan disagreed with Dr. Nadamoto's use of the gait-derangement method of assessing Kapuwai's impairment because Kapuwai's condition did not fit the criteria for using that method under the Fifth Edition of the AMA Guides. Dr. Tan concluded that the range-of-motion method, which was based on measuring the range of motion of the great toe, was the appropriate method to use. Applying the range-of-motion method, Dr. Tan determined that Kapuwai had sustained a mild toe impairment

equivalent to a 1 percent PPD of the whole person.

On February 6, 2006, the LIRAB entered a decision that modified the Director's PPD award and affirmed the Director's disfigurement award. The LIRAB credited Dr. Tan's opinion in finding 1) that Kapuwai should be rated under the range-of-motion method and 2) that under the Fifth Edition to the AMA Guides, Kapuwai's range of motion measurements corresponded to a 1 percent impairment of the whole person. The LIRAB also credited Kapuwai's testimony on "how his toe condition has interfered with his activities of daily living, such as walking, going up and down stairs, driving, and standing."

The LIRAB concluded:

Based on the foregoing, including Dr. Tan's impairment rating and [Kapuwai's] testimony regarding his pain symptoms and how his toe condition has interfered with his activities of daily living, we conclude that [Kapuwai] is entitled to benefits for 4% permanent partial disability of the whole person....

The LIRAB's decision did not separately determine what Kapuwai's PPD award would have been if based solely on the impairment to his right great toe. The LIRAB agreed with the Director's $800 disfigurement award.

Kapuwai moved for reconsideration on the ground that the LIRAB failed to convert its award of 4 percent PPD of the whole person to an award based on the impairment of his right great toe, a specific body part covered by the schedule of awards for PPD under HRS § 386–32(a). The LIRAB denied Kapuwai's motion for reconsideration on March 29, 2006.

Kapuwai also submitted a request to the LIRAB that the City be required to pay $2,535, which represented one-half of the attorney's fees and cost incurred by Kapuwai in the City's appeal to the LIRAB. In support of his request, Kapuwai argued that the City raised two issues in the appeal (the extent of the PPD award and the extent of the disfigurement award); that Kapuwai was the prevailing party on the issue of disfigurement; and that the LIRAB did not reverse but only modified the Director's decision on the issue of PPD. The LIRAB effectively denied Kapuwai's request by not assessing the City with 50 percent of Kapuwai's attorney's fees and costs, but instead making Kapuwai's attorney's fees and costs a lien upon the compensation payable by the City to Kapuwai.

## STANDARDS OF REVIEW

I.  Review of a LIRAB Decision.

Appellate review of the [LIRAB's] decision is governed by Hawai'i Revised Statutes (HRS) § 91–14(g) (1993), which provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g). Under HRS § 91–14(g), [conclusions of law] are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); [findings of fact] are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6).

*Nakamura v. State,* 98 Hawai'i 263, 266–67, 47 P.3d 730, 733–34 (2002) (quotation marks omitted).

II.  Statutory Interpretation

Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

[When construing a statute,] our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute,. an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

*Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (internal quotation marks, brackets, and ellipses omitted and block quote format changed).

III.   Attorney's Fees

■ We review the grant or denial of attorney's fees under the abuse of discretion standard. *Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i,* 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005).

### DISCUSSION

On appeal, Kapuwai argues that the LIRAB erred in: 1) failing to "convert" its PPD award of 4 percent of the whole person to a PPD award of the right great toe, a body part covered by the PPD schedule of awards set forth in HRS § 386–32(a); and 2) denying Kapuwai's request that 50 percent of his attorney's fees and costs be assessed against the City.

For the reasons set forth below, we conclude that Kapuwai is entitled to a PPD award based on the impairment of his great toe if that exceeds an award based on the impairment of his whole person. Accordingly, the LIRAB erred in failing to determine what Kapuwai's PPD award would have been if based on the impairment to his right great toe. We disagree with Kapuwai's contention that we should determine the PPD rating for his right great toe on appeal, and we remand the case to the LIRAB for that determination. Because we are remanding the case, we do not decide Kapuwai's claim that he was entitled to the assessment of his attorney's fees and costs against the City pursuant to HRS § 386–93(b). However, to assist the LIRAB on remand, we provide guidance on how to apply HRS § 386–93(b).

I.

A.

HRS § 386–32(a) establishes a schedule of pre-determined awards for the loss of certain specified body members such as a finger, hand, arm, toe, foot, and leg. With respect to the injury to Kapuwai's great toe, HRS § 386–32(a) provides in relevant part:

(a) Permanent partial disability. Where a work injury causes permanent partial disability, the employer shall pay the injured worker compensation in an amount determined by multiplying the effective maximum weekly benefit rate prescribed in section 386–31 by the number of weeks specified for the disability as follows:

. . . .

Great toe. For the loss of a great toe, thirty-eight weeks;

. . . .

Partial loss or loss of use of member named in schedule. Where a work injury causes permanent partial disability resulting from partial loss of use of a member named in this schedule, and where the disability is not otherwise compensated in this schedule, compensation shall be paid for a period that stands in the same proportion to the period specified for the total loss or loss of use of the member as the

partial loss or loss of use of that member stands to the total loss or loss of use thereof[.]

HRS § 386–32(a) also establishes the method of determining compensation in other cases of PPD not specifically covered by the schedule of awards, such as PPD of the whole person:

Other cases. In all other cases of permanent partial disability resulting from the loss or loss of use of a part of the body or from the impairment of any physical function, weekly benefits shall be paid at the rate and subject to the limitations specified in this subsection for a period that bears the same relation to a period named in the schedule as the disability sustained bears to a comparable disability named in the schedule. *In cases in which the permanent partial disability must be rated as a percentage of the total loss or impairment of a physical or mental function of the whole person, the maximum compensation shall be computed on the basis of the corresponding percentage of the product of three hundred twelve times the effective maximum weekly benefit rate prescribed in section 386–31.*

(Emphasis added.)

Kapuwai argues that the LIRAB erred in failing to convert its award of 4 percent PPD of the whole person into an award based the impairment of his great toe. Because of the way in which the benefits for scheduled and unscheduled disabilities are calculated under HRS § 386–32(a), it is possible that the benefits based on the impairment of a scheduled body member may exceed the benefits based on the impairment of the whole person. Kapuwai apparently assumes that an award based on the PPD of his great toe would exceed the LIRAB's award based on his whole person. He argues that the LIRAB was mandated under HRS § 386–32(a) to base its award on the scheduled injury to his great toe rather than the "other case" provision of HRS § 386–32(a), which provides for an award based on the whole person.

The City, on the other hand, argues that the injury to Kapuwai's great toe was not "clean-cut" because it affected other parts of his body, caused him to have an unsteady gait and permanent limp, and interfered with his daily living activities. The City contends that because the impairment of Kapuwai's great toe extended to other parts of his body and interfered with their efficiency, the LIRAB correctly based its PPD award on Kapuwai's whole person.

In *Respicio v. Waialua Sugar Co.*, 67 Haw. 16, 675 P.2d 770 (1984), an employee injured his right index finger which impaired the grip on his right hand, making it difficult for him to perform his work duties. *Id.* at 17, 675 P.2d at 772. The LIRAB calculated the employee's PPD benefits based on the scheduled amount allotted for a whole hand rather than the scheduled amount allotted for an index finger. *Id.* at 17–18, 675 P.2d at 772. The employer appealed, claiming that under HRS § 386–32(a), the employee's benefits should have been limited to the scheduled amount for his injured finger, as opposed to his hand, because only one finger of his hand was injured. *Id.* at 18, 675 P.2d at 772. The employer argued that the enactment of a schedule specifying benefit amounts for different parts of the body was an indication of the Legislature's intent that the schedule would provide the exclusive mode of compensation. *Id.*

The Hawai'i Supreme Court rejected the employer's argument and instead followed the trend of decisions departing from the exclusiveness of scheduled allowances. *Id.* The court noted that "[b]enefits will be limited to schedule amounts if the loss is 'clean cut', i.e., where there are no complications to other parts of the body." *Id.* However, the court concluded that "[l]oss of a smaller member may be treated as a percentage loss of a larger member if the effects of the loss extend to other parts of the body." *Id.* It thus upheld the LIRAB's award that was based on a disability to the employee's hand. *Id.* at 18, 675 P.2d at 773. In support of its holding, the court cited the trend toward non-exclusive application of scheduled allowances and the beneficent purposes of the workers' compensation law to restore the injured employee and to compensate the employee adequately. *Id.* at 18, 675 P.2d at 772–73.

*Respicio* is in accord with the current majority view. Larson's Workers' Compensation Law, a leading treatise on workers' compensation, states:

> The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.

Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law,* (hereinafter, "Larson's") § 87.02 (2008). As noted in Larson's, the modern majority view that schedule allowances should not be exclusive applies "whether the issue is treatment of a smaller member as a percentage loss of a larger, or treatment of any scheduled loss as a partial or total disability of the body as a whole." *Id.* at § 87.04. *Respicio* involved a situation in which both the impaired larger member (hand), on which the PPD award was based, and the injured smaller member (index finger) were scheduled members under HRS § 386–32(a). However, we conclude that the rationale of *Respicio* applies equally to a situation where the effects of an injury to a scheduled member extend to other parts of the body not included in HRS § 386–32(a)'s schedule of awards or to the whole person.

■ There was evidence in the record that the effects of Kapuwai's great toe injury extended to and interfered with the efficiency of other parts of his body and his whole person. Kapuwai testified that the injury to his great toe resulted in pain to his entire foot; caused him to have difficulties with balance, an unsteady gait, and a permanent limp; and affected his daily living activities. The LIRAB credited Kapuwai's testimony. We conclude that the LIRAB was not limited to basing its PPD award on the impairment of Kapuwai's great toe, but could determine the extent to which the effects of Kapuwai's great toe injury resulted in the impairment of his whole person.

■ However, this does not mean that the LIRAB could base its award on the impair-

ment of Kapuwai's whole person if an award based solely on the impairment of his great toe would have been higher. HRS § 386–32(a) entitles Kapuwai to an award based on the impairment of his great toe. We conclude that Kapuwai is entitled to a PPD award based on the impairment of his great toe if that exceeds the LIRAB's current award based on the impairment of his whole person.[1] This conclusion is logical and consistent with the beneficent purposes behind the workers' compensation statute. *Respicio,* 67 Haw. at 18, 675 P.2d at 772.

The LIRAB did not determine what Kapuwai's PPD award would have been if based on the impairment of his great toe under the HRS § 386–32(a) schedule. Thus, we cannot tell if an award based on the impairment of Kapuwai's great toe would exceed the amount awarded by the LIRAB based on the PPD of Kapuwai's whole person. Kapuwai requested a PPD award based on the impairment of his great toe. Under these circumstances, we vacate the LIRAB's PPD award and remand the case for a determination of a PPD award based on the impairment of Kapuwai's great toe.

### B.

■ Kapuwai asserts that a remand to the LIRAB is unnecessary because this court can and should determine on appeal the appropriate amount to award for PPD based on the impairment of his great toe. Kapuwai contends that using the Third Edition (Revised) (hereinafter, "Third Edition") of the AMA Guides, this court can "convert" the LIRAB's determination of 4 percent PPD of the whole person to a PPD rating for his great toe. The LIRAB relied on the Fifth Edition of the AMA Guides and credited the opinion of Dr. Tan who used the Fifth Edition of the AMA Guides in rating Kapuwai. However, Kapuwai argues that we should use the Third Edition of the AMA Guides to convert the LIRAB's award because the Third Edition contains conversion tables which permit conversion of a whole person

---

1. Because scheduled awards are based on amounts fixed by statute, it is possible for an award based on impairment of a scheduled member to exceed an award based on impair-

ment of an unscheduled larger portion of the body or the body as a whole. *See Larson's* at § 87.06.

impairment to a great toe impairment, whereas the Fifth Edition does not. Kapuwai reproduces portions of the Third Edition's conversation tables which show that a 4 percent PPD of the whole person converts into a PPD of the great toe that ranges from 69 percent to 90 percent. He argues that we should accord him the most favorable percentage in that range and thus hold that he suffered a 90 percent PPD of his great toe.

▬ We reject Kapuwai's contention that we should and can determine the appropriate PPD rating for his great toe. The extent of a worker's PPD is a question of fact to be decided by the LIRAB. Our function is to review the LIRAB's factual findings for clear error, not to find facts ourselves.

▬ The physician conducting the impairment rating is the appropriate person to make the initial determination of the most appropriate edition of the AMA Guides to apply. *See Duque v. Hilton Hawaiian Village,* 105 Hawai'i 433, 440, 98 P.3d 640, 647 (2004). The AMA Guides are also not the only factor to consider in assessing impairments. *Cabatbat v. County of Hawai'i, Dep't of Water Supply,* 103 Hawai'i 1, 8, 78 P.3d 756, 763 (2003). In *Duque,* the Hawai'i Supreme Court stated:

> [T]he AMA [ (American Medical Association) ] also recognizes that the [AMA] Guides are only a tool for evaluation of permanent impairment used by the physician and may be used *as a component in disability assessment.* It is cautioned that the [AMA] Guides is not to be used for direct financial awards nor as the sole measure of disability. Rather, the impairment evaluation is only one aspect of disability determination. A disability determination also includes information about the individual's skills, education, job history, adaptability, age, and environment requirements and modifications. Accordingly, the AMA recognizes that assessing these factors can provide a more realistic picture of the effects of the impairment on the ability to perform complex work and social activities. Hence, in applying the [AMA] Guides[,] the impairment rating is

one factor in a sum of considerations employed in arriving at a disability decision. As emphasized by the Fifth Edition, impairment percentages derived from the [AMA] Guides criteria should not be used as direct estimates of disability.

*Duque,* 105 Hawai'i at 439, 98 P.3d at 646 (citations, internal quotation marks, brackets, and ellipses in original omitted).

Moreover, the record indicates that the LIRAB may have based its PPD award of 4 percent of the whole person on more than just the impairment of Kapuwai's great toe. In support of its PPD award, the LIRAB cited both Dr. Tan's impairment rating of 1 percent of the whole person, which was based on range-of-motion measurements of the great toe, and Kapuwai's testimony regarding his pain symptoms and how his great toe injury affected other parts of his body and his daily living activities. Thus, a direct conversion of the LIRAB's 4 percent whole person PPD rating into a great toe PPD rating may not be appropriate.

Finally, we do not agree with Kapuwai's contention that where the AMA Guides provide a range of percentages for an impairment, the rating physician and the LIRAB must select the highest percentage in the range.

For these reasons, we believe it is necessary to remand the case to the LIRAB for its determination of an award based on the impairment of Kapuwai's great toe.

## II.

### A.

Kapuwai contends that the LIRAB erred in denying his request to assess one-half of his attorney's fees and costs against the City. HRS § 386–93 (1993 & Supp.2007) governs the award of attorney's fees and costs in workers' compensation cases and provides as follows:

> (a) If the director of labor and industrial relations, appellate board [2] or any court finds that proceedings under this chapter have been brought, prosecuted, or defended without reasonable ground the whole

---

**2.** The term "appellate board" is defined by HRS § 386–1 (1993) to mean the LIRAB.

costs of the proceedings may be assessed against the party who has so brought, prosecuted, or defended the proceedings.

(b) If an employer appeals a decision of the director or appellate board, the costs of the proceedings of the appellate board or the appellate court, together with reasonable attorney's fees, shall be assessed against the employer *if the employer loses;* provided that if an employer or an insurance carrier, other than the employer who appealed, is held liable for compensation, the costs of the proceedings of the appellate board or the appellate court, together with reasonable attorney's fees, shall be assessed against the party held liable for the compensation.

(Emphasis added.)

On appeal, Kapuwai asserts that the LIRAB should have assessed his attorney's fees and cost against the City pursuant to HRS § 386–93(b). Kapuwai argues that an employer "loses" its appeal within the meaning of HRS § 386–93(b) as long as the employer remains liable for compensation. Alternatively, Kapuwai argues that an employer loses its appeal if the LIRAB or the appellate court does not fully adopt the position argued by the employer. In this case, the City argued to the LIRAB that Kapuwai was only entitled to an award of 1 percent PPD of his whole person. Kapuwai asserts that because the LIRAB rejected the City's position and awarded 4 percent PPD of his whole person, the City lost its appeal.

The City counters that it did not argue before the LIRAB that Kapuwai was not entitled to any PPD, but only that the 7 percent PPD of the whole person awarded by the Director was excessive and should be reduced to 1 percent. The City argues that the LIRAB's reduction of the PPD award from 7 percent to 4 percent of the whole person means that the City was the successful party in the appeal to the LIRAB.

■ The determination of whether the City is the loser of its appeal to the LIRAB under HRS § 386–93(b) must be based on the final decision of the LIRAB. *See Lindinha v. Hilo Coast Processing Co.,* 104 Hawai'i 164, 171–72, 86 P.3d 973, 980–81 (2004). We are remanding this case to the LIRAB for its determination of an award based on the impairment of Kapuwai's great toe, which may affect the LIRAB's final decision. Accordingly, we do not decide Kapuwai's claim that the LIRAB erred in denying his request for assessment of attorney's fees and costs under HRS § 386–93(b).[3] However, to assist the LIRAB on remand, we provide the following guidance on how to interpret HRS § 386–93(b).

### B.

The determination of whether an employer has won or lost its appeal is relatively straightforward when the issue being appealed is whether the employee's injury is a compensable work-related injury. However, where the employer concedes that the employee has suffered a compensable injury and only appeals the extent of that injury, it is not so clear how to evaluate whether the employer has won or lost.

■ The Hawai'i Supreme Court and this court have applied the crucial issue test in deciding whether the employer won or lost its appeal within the meaning of HRS § 386–93(b). *Mitchell v. BWK Joint Venture,* 57 Haw. 535, 551, 560 P.2d 1292, 1301 (1977); *Yamada v. Royal Hawaiian Macadamia Nut Co.,* 5 Haw.App. 521, 525, 704 P.2d 914, 917 (1985). Under the crucial issue test, we look to see whether the employer prevailed on the crucial issue raised in the appeal. *Mitchell,* 57 Haw. at 551, 560 P.2d at 1301; *Yamada,* 5 Haw.App. at 524–25, 704 P.2d at 916–17.

In *Survivors of Iida v. Oriental Imports, Inc.,* 84 Hawai'i 390, 403, 935 P.2d 105, 118 (App.1997), this court addressed the question of whether an employer that appealed an issue but later withdrew it had lost the appeal under HRS § 386–93(b). In holding that the employer in this situation had lost the appeal, this court discussed its view of

3. Kapuwai may resubmit a request for assessment of attorney's fees and costs once the LIRAB renders its final decision on remand.

the Legislature's intent in enacting HRS § 386–93(b):

> In our opinion, the legislature's intent in enacting HRS § 386–93(b), in its simplest form, was to compel employers to shoulder the costs of unsuccessful appeals from workers' compensation decisions, while simultaneously easing the financial burden of claimants who must expend time and resources responding to unsuccessful appeals. One goal of the provision is to discourage appeals by employers. Unlike HRS § 386–93(a), which allows costs to be taxed against any party for frivolous appeals, HRS § 386–93(b) places the burden solely on the employer if the employer loses, regardless of the meritorious nature of the appeal. The legislature clearly intended to add an element of risk to any appeal undertaken by an employer. This element of risk, coupled with the different manner in which the legislature addresses appeals by employers and employees, is palpable evidence of the policy to blunt the willingness of employers to appeal decisions of the Director or LIRAB.
>
> Another policy underlying HRS § 386–93(b), which buttresses the beneficent purpose of the workers' compensation statute, is the element of fairness. Employers are typically better able to handle the costs of both defending and appealing a claim for workers' compensation benefits than employees on the other side of the table. We believe the legislature recognized the comparative financial disparities between employers and employees in this context. An employee seeking workers' compensation benefits is, under most circumstances, unemployed. Hence, as a general matter, the costs of proceedings present an onerous burden for employees. It would be inherently inequitable to force an already burdened worker (or his or her dependents) to twice expend funds successfully litigating a claim for workers' compensation. Fairness dictates, then, that employers both assume the risk and ultimately pay for the costs associated with unsuccessful appeals.

*Id.* at 403, 935 P.2d at 118 (footnotes omitted).

## C.

### 1.

■ We disagree with Kapuwai's claim that an employer that does not dispute the compensability of the employee's injury on appeal nevertheless "loses" its appeal, within the meaning of HRS § 386–93(b), as long as the employer remains liable for some compensation. First, the plain language of the statute does not support Kapuwai's proffered interpretation. HRS § 386–93(b) conditions the assessment of attorney's fees and costs on the employer losing its appeal. Where an employer does not appeal the compensability of the employee's injury but only the extent of that injury, it is difficult to characterize the employer as the loser on appeal if it successfully obtains the relief it requests. Yet that would be the result if Kapuwai's interpretation is accepted.

Kapuwai's interpretation is also inconsistent with the *Mitchell* court's resorting to the crucial issue test in order to decide whether the appealing employer had lost the appeal under HRS § 386–93(b). In *Mitchell*, the appealing employer argued that despite the LIRAB's rejection of the employer's claim that the employee's scrotal hydrocele injury was non-compensable, the employer had not lost the appeal because the LIRAB had substantially reduced the disability benefits the employer owed. *Mitchell*, 57 Haw. at 550–51, 560 P.2d at 1301. The appealing employer obviously remained liable for some compensation and thus its argument could have been summarily rejected if that was the test under HRS § 386–93(b) for determining whether the employer lost its appeal. The court, however, resorted to applying the crucial issue test and concluded, after careful examination of the record, that the crucial issue before the LIRAB was the cause of the employee's hydrocele and that the employee had prevailed on that issue. *Id.* at 551, 560 P.2d at 1301.

### 2.

The legislative history regarding the first part of HRS § 386–93(b), which provides for the assessment of attorney's fees and costs against an appealing employer that loses,

does not provide direct guidance on how to determine whether an employer has lost its appeal. In 1955, the Revised Laws of Hawaii (RLH) § 97–69 (1955), a predecessor to HRS § 386–93, only authorized the assessment of costs against a party who acted without reasonable grounds. RLH § 97–69 provided:

If the director, appellate board or any court before which any proceedings are brought under this chapter, determines that the proceedings have been brought, prosecuted or defended without reasonable ground he may assess the whole cost of the proceedings upon the party who has so brought, prosecuted or defended them.

In 1957, RLH § 97–69 was amended by Act 214 which changed the period at the end of the section to a semicolon and added the following words:

provided that if an employer appeals a decision and award of the appellate board and in such appeal *is unsuccessful* in the circuit court, the costs of the proceedings before the appellate board and the circuit court, together with reasonable attorneys' fees, shall be assessed against the employer.

1957 Haw. Sess. L. Act 214, § 4, at 240 (emphasis added). The report of the House Committee on Labor and Industrial Relations on this legislation stated: "Regarding the assessment of costs and attorneys' fees, it was felt that a poor or destitute claimant would be at a serious disadvantage on any appeal by an employer and this new provision would tend to discourage unnecessary appeals." Hse. Stand. Comm. Rep. No. 267, in 1957 House Journal, at 701. However, none of the committee reports on the legislation provided guidance on when an employer's appeal would be considered "unsuccessful."

In 1959, RLH § 97–69 was further amended by Act 241 to extend the scope of RLH § 97–69 to include employer appeals from the Director and by using the term "lose" instead of "unsuccessful." 1959 Haw. Sess. L. Act 241, § 2, at 186. Act 241 amended RLH § 97–69 to state in relevant part as follows:

provided, that if an employer appeals a decision and award of *the director*, appel-

late board or the circuit court, the costs of the proceedings before the appellate board, circuit court or the supreme court of the Territory of Hawaii, together with reasonable attorney's fees, shall be assessed against the employer *if the employer should lose.*

*Id.* (emphases added). The committee reports on the legislation stated that the intent and purpose of the amendment to RLH § 97–69 was to "liberalize" the workmen's compensation law by: ... "[r]equiring the employer to pay the costs of an appeal, including reasonable attorneys' fees, where the employer takes an appeal from the decision and award of the director, appellate board, or the circuit court and loses such appeal." Hse. Stand. Com. Rep. No. 569, in 1959 House Journal, at 790; Sen. Stand. Com. Rep. No. 818, in 1959 Senate Journal, at 911.

In 1963, the Legislature enacted Act 116, 1963 Haw. Sess. L. Act 116, at 103, as part of an extensive revision and recodification of the workers' compensation law. Act 116 divided RLH § 97–69 into subsections (a) and (b) and recodified the section, with minor amendments, as RLH § 97–102 to read as follows:

(a) If the director, appellate board or any court finds that proceedings under this chapter have been brought, prosecuted or defended without reasonable ground the whole costs of the proceedings may be assessed against the party who has so brought, prosecuted or defended such proceedings.

(b) If an employer appeals a decision of the director, appellate board or circuit court, the costs of the proceedings of the appellate board, circuit court or the supreme court of the State of Hawaii, together with reasonable attorney's fees shall be assessed against the employer, *if the employer loses.*

1963 Haw. Sess. L. Act 116, § 1, at 122 (emphasis added). There is no pertinent discussion of the amendments creating the new RLH § 97–102 in the committee reports accompanying Act 116. RLH § 97–102 remained unchanged through 1966 and was

later recodified in 1968 as HRS § 386–93. *See* 1968 Haw. Sess. L. Act 16, § 2, at 18.

Kapuwai contends that the legislative history of the 1967 amendments to RLH § 97–102(b) (hereinafter, "1967 Amendments"), which added a proviso at the end of subsection (b), supports his claim that an appealing employer is the loser on appeal as long as it remains liable for some compensation. In 1967, the Legislature enacted Act 180, 1967 Haw. Sess. L. Act 180, at 176, to amend RLH § 97–102(b) by adding a proviso at the end of subsection (b) to address the situation where an employee is a party to an appeal involving a dispute between employers or their insurances carriers over which is liable for paying the employee's benefits. After the 1967 Amendments, RLH § 97–102(b) provided as follows, which, for purposes of our analysis, is essentially the same [4] as the current version of HRS § 386–93(b):

> (b) If an employer appeals a decision of the director, appellate board or circuit court, the costs of the proceedings of the appellate board, circuit court or the supreme court of the State, together with reasonable attorney's fees shall be assessed against the employer, if the employer loses; provided that if an employer or an insurance carrier, other than the employer who appealed, is held liable for compensation, the costs of the proceedings of the appellate board, circuit court, or the supreme court of the State together with reasonable attorney's fees shall be assessed against the party held liable for the compensation.

RLH § 97–102(b) (Supp.1965) and 1967 Haw. Sess. L. Act 180, § 1, at 176.

The 1967 Amendments did not involve the first part of subsection (b) (before the proviso) that is applicable to Kapuwai's case and thus we hesitate to place too much weight on the legislative history of the 1967 Amendments. While the legislative history of the 1967 Amendments contains some mixed messages, we conclude that, on balance, it tends to refute rather than support Kapuwai's interpretation.

The 1967 Amendments were based on House Bill 760 (H.B. 760). As originally introduced, H.B. 760 provided:

> SECTION 1. Section 97–102 is amended by adding thereto the following subsection:
>
> "(c) Notwithstanding any provision to the contrary, if an employer or an insurance carrier appeals a decision of the director, appellate board or circuit court and *the decision in any of these appeals imposes liability upon the employer or the insurance carrier or upon any other employer or insurance carrier for any compensation*, the costs of the proceedings of the appeal and reasonable attorney's fees incurred by the employee in the appeal shall be assessed against the party or parties liable for the compensation."

H.B. No. 760, 4th Leg., Reg. Sess. (Haw. 1967) (emphasis added). In reviewing H.B. 760, the House Committee on Labor and Employment Problems expressed concern with the above-emphasized language of H.B. 760 because it would "impose court costs and attorney's fees upon the appealing employer even when he does not lose the appeal." Hse. Stand. Comm. Rep. No. 357, in 1967 House Journal, at 608. As an example of when this result may occur, the committee report stated, "This may happen when an employer appeals on the ground that the amount of compensation is excessive and succeeds in having the amount reduced." *Id.*

The House committee report stated in relevant part as follows:

> H.B. No. 760 provides that if an employer or an insurance carrier appeals a workmen's compensation decision of the department of labor, appeal board or circuit court, and the appealing employer or another employer or insurance carrier is held liable for the payment of workmen's compensation, the court costs and attorney's fees in any of the appeals shall be assessed against the party or parties held liable for the compensation.
>
> Your Committee agrees that an employee who is an appellee should not be made

---

**4.** Subsequent amendments were made to subsection (b) after 1967 to reflect the ability to appeal the LIRAB's decision directly to the appellate courts. *See* 1969 Haw. Sess. L. Act 244, § 2g, at 450; 2004 Haw. Sess. L. Act 202, § 45, at 935.

to pay court costs or attorney's fee when the final decision or judgment awards him compensation for which the appealing employer or another employer or insurance carrier is held liable. However, we believe that the appealing employer should be made to pay such costs and fee only when he loses the appeal as is now the requirement under section 97–102(b), R.L. 1955, as amended.

*H.B. 760 in the present form will impose court costs and attorney's fees upon the appealing employer even when he does not lose the appeal. This may happen when an employer appeals on the ground that the amount of compensation is excessive and succeeds in having the amount reduced. Under this bill, the appealing employer would be required to pay such costs and fees.*

Your Committee believes that the primary purpose of the bill should be to relieve the appellee employee of such costs and fees when the employer takes the appeal and prevails but the final decision or judgment holds an employer or insurance carrier other than the appealing employer liable for the compensation regardless of the amount.

To carry out this specific intent and purpose, your Committee has amended H.B. No. 760. As amended, the bill adds a proviso at the end of section 97–102(b) which, in effect, would preserve the present requirement that an appealing employer shall pay court costs and attorney's fees only if he loses the final appeal, but would require payment of such costs and fees by another employer or insurance carrier if such other employer or insurance carrier is held liable for any compensation in the final decision or judgment.

Your Committee is in accord with the intent and purpose of H.B. No. 760, as amended herein, and recommends its referral to the Committee on Judiciary in the form attached hereto as H.B. No. 760, H.D. 1.

*Id.* at 608–09 (emphasis added).

Kapuwai cites the above-emphasized language of the House committee report and argues it indicates the Legislature's intent that an employer that appeals on the ground that compensation is excessive and succeeds in getting the amount reduced shall be required to pay the employee's attorney's fees and costs under HRS § 386–93(b). We conclude that the committee report indicates just the opposite, and that it signifies that the Legislature did not believe the existing statute mandated that the employer pay the employee's attorney's fees and costs in this situation. Our conclusion is supported by the committee's action in amending H.B. 760. The committee deleted the language in the original bill authorizing the assessment of attorney's fees and cost against the appealing employer where the decision in the appeal "imposes liability upon the [appealing] employer ... *for any compensation.*" Instead, the amended bill passed by the committee, H.B. 760, House Draft 1 (H.D. 1), which was the version of the bill subsequently enacted, 1967 Haw. Sess. L. Act 180, § 1, at 176, provided as follows:

SECTION 1. Subsection (b) of Section 97–102, Revised Laws of Hawaii 1955, as amended is amended by substituting a semicolon for the period at the end thereof and adding the following:

"provided that if an employer or an insurance carrier, other than the employer who appealed, is held liable for compensation, the costs of the proceedings of the appellate board, circuit court or the supreme court of the State together with reasonable attorney's fees shall be assessed against the party held liable for the compensation."

H.B. No. 760, H.D. 1, 4th Leg., Reg. Sess. (Haw.1967).

We note, however, that language in a committee report not cited by Kapuwai provides some support for his claim. The committee report on H.B. 760, H.D. 1, which was prepared by the Senate Committee on Labor, provided in relevant part:

The purpose of this bill is to amend the Hawaii Workmen's Compensation Law to relieve an employee of the burden of paying costs and attorney's fees when the decision or judgment on an appeal taken by an employer holds an employer or in-

surance carrier other than the appealing employer liable for compensation.

Section 97–102(b) now requires an appealing employer to pay an employee's costs and attorney's fees when the employer loses an appeal. Where an employer or insurance carrier other than the appealing employer or his insurance carrier is held liable for the payment of compensation by the decision or judgment on appeal, this provision does not apply and the employee-appellee may be liable for the payment of his costs and attorney's fees in an appeal he did not initiate. This bill will expressly provide for the payment of costs and attorney's fees by the employer or insurance carrier who is held liable for compensation and will relieve the employee of the burden.

*An employee should not be made to pay court costs and attorney's fees in an appeal he does not initiate. Where compensation is payable by someone, the person liable for compensation should also be liable for the costs and attorney's fees.*

Sen. Stand. Comm. Rep. No. 668, in 1967 Senate Journal, at 1154 (emphasis added).

The above-emphasized statement in the Senate committee report was made in the context of discussing the justification for H.B. 760, H.D. 1, which added a new proviso to subsection (b) to address the situation where an employee is a party to an appeal involving a dispute between employers or their insurance carriers over which is liable to pay compensation to the employee. The previously-discussed comment in the House committee report was directed at how the statute would apply to the circumstances presented by this case—an employer that only appeals on the ground that the compensation awarded was excessive. Thus, on balance, we conclude that the House committee report provides a more probative indication of the Legislature's intent and supports our view that an employer does not automatically lose its appeal whenever it remains liable for some compensation.

### D.

■ We reject Kapuwai's alternative argument that the appealing employer's status as the winner or loser should be based solely on whether the employer obtained the full reduction for which it argued, rather than based on the reduction it achieved. We conclude that when an employer does not dispute the compensability of the employee's injury and only appeals on the ground that a PPD award is excessive, it should be regarded as the loser under HRS § 386–93(b) if it fails to obtain a substantial reduction in the compensation award. In our view, this test is faithful to both the language of HRS § 386–93(b), which only permits the assessment of attorney's fees and costs against an appealing employer "if the employer loses," and the legislative purpose to discourage unnecessary appeals and avoid unfairly burdening an employee with the costs of defending against an appeal. The test was derived by construing the language of HRS § 386–93(b) within the context and spirit of the workers' compensation law.

■ The crucial issue in the type of case presented here is the amount of compensation the employer is required to pay. The employer does not prevail on this issue if it only obtains a minor or insubstantial reduction in the award. In determining whether the employer has achieved a substantial reduction in the award, the LIRAB should consider both the relative and absolute amount of the reduction. For example, if the employer appeals only a small compensation award, a large percentage reduction in the award may not be sufficient to avoid the assessment of the employee's attorney's fees and costs. As noted, we do not agree with Kapuwai's contention that the employer should automatically be regarded as the loser on appeal if it fails to obtain the full reduction it requested. In construing a different attorney's fees statute, the Hawai'i Supreme Court has held that "where a party prevails on the disputed main issue, even though not to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.* 58 Haw. 606, 620, 575 P.2d 869, 879 (1978). However, we believe the LIRAB may consider the position taken by the employer on appeal as a factor in its

 

determination of whether the employer is the loser and has achieved a substantial reduction in the award.

### CONCLUSION

We vacate the LIRAB's February 6, 2006, "Decision and Order" and its March 29, 2006, "Order Denying Motion for Reconsideration" with respect to its PPD award, and we remand the case for further proceedings consistent with this opinion.