221 P.3d 505

### COMMUNICATIONS–PACIFIC, INC., Plaintiff–Appellant,

v.

### CITY AND COUNTY OF HONOLULU; Mary Patricia Waterhouse, Director of the Department of Budget and Fiscal Services and Chief Procurement Officer, in her official capacity; Toru Hamayasu, Chief Planner, Transportation Planning Division, Department of Transportation Services and Acting Deputy Director of the Department of Transportation Services, in his official capacity, Defendants–Appellees,

and

### John Does 1–5; Jane Does 1–5; and Doe Entities 1–5, Defendants.

No. 28010.

Intermediate Court of Appeals of Hawai'i.

Nov. 30, 2009.

requirement that police must provide *Miranda* warnings for each specific crime before questioning a suspect.

**528**

Terry E. Tomason, Corianne W. Lau (Peter S. Knapman with them on the briefs; Alston Hunt Floyd & Ing), Honolulu, for Plaintiff–Appellant.

Bruce A. Nakamura, (Bert T. Kobayashi, Jr., Jonathan A. Kobayashi, and Brendan S. Bailey, Kobayashi, Sugita, & Goda, on the briefs), Honolulu, for Defendants–Appellees.

NAKAMURA, C.J., WATANABE and FUJISE, JJ.

Opinion of the Court by FUJISE, J.

Plaintiff–Appellant Communications–Pacific, Inc. (Comm–Pac) appeals from the May 10, 2006 final judgment of the Circuit Court of the First Circuit (circuit court)[1] in favor of Defendants–Appellees City and County of Honolulu, Mary Patricia Waterhouse, Director of the Department of Budget and Fiscal Services and Chief Procurement Officer, in her official capacity, and Toru Hamayasu (Hamayasu), Chief Planner, Transportation Planning Division, Department of Transportation Services and Acting Deputy Director of the Department of Transportation Services, in his official capacity (collectively, City). We affirm.

**I.**

On April 14, 2005, the City issued a "Notice to Consultants and Request for Professional Services" (RPS), seeking professional services to conduct an alternative analysis and prepare a draft environmental impact statement "to support the selection of a locally preferred high capacity transportation alternative for Oahu."

On May 16, 2005, Parsons Brinckerhoff Quade & Douglas, Inc. (Parsons) and Earth-Tech (ET) submitted letters of interest and statements of qualification in response to the City's RPS. Parsons's submission identified Comm–Pac as one of its sub-consultants for public involvement and further described Comm–Pac's Vice–President, Cindy McMillan, as the "Public Involvement Lead." A committee designated by the City evaluated the submissions from Parsons and ET and determined that Parsons was the first-ranked competitor.

On August 26, 2005, the City and Parsons executed an "Agreement for Professional Services." According to Comm–Pac:

During the course of the negotiations, [the City] directed or required Parsons to use a new sub-consultant on its team, Community Planning and Engineering, Inc. ("CPE"). The Contract stated that CPE would perform "Public Involvement" work ("Public Involvement" work Parsons had already designated in its submission for [Comm–Pac] and other team sub-consultants). The Contract further showed that CPE would receive $860,000 or nearly 10% of the total awarded work. By comparison, [Comm–Pac], the company Parsons had previously presented to the Selection Committee as Parsons'[s] "Public Involvement Task Lead," would receive work valued at $25,000 or less than 1% of the awarded work.

CPE was not a sub-consultant on either of the teams Parsons and ET originally formed and submitted to [the City] for evaluation on May 16, 2005. The Selection Committee had no opportunity to review any information about CPE prior to the award of the Contract to Parsons. Accordingly, the Selection Committee had no opportunity to evaluate or consider CPE in its rankings of Parsons, ET or any of their listed sub-consultants according to the se-

---

1. The Honorable Eden E. Hifo presided.

lection criteria required under Haw.Rev. Stat. § 103D–304(f), prior to the award of the Contract to Parsons.

On or about October 27, 2005, during a public hearing before the City Council Transportation Committee, Defendant Hamayasu acknowledged that, during negotiations, he caused Parsons to add CPE as a sub-consultant to the Contract. According to Mr. Hamayasu, CPE was added because he identified a need for CPE when he was negotiating the contract's "scope of work" with Parsons.

On November 23, 2005, Comm–Pac filed a petition for declaratory ruling with the Procurement Policy Board, Department of Accounting and General Services, as to the application of Hawaii Revised Statutes (HRS) § 103D–304 and Hawaii Administrative Rules (HAR) § 3–122–63(a). The City objected to the petition. The State Comptroller declined consideration of the petition, claiming a lack of jurisdiction on behalf of himself and the Procurement Policy Board.[2] Whether Comm–Pac pursued any other administrative remedies is not reflected in the record.

On December 20, 2005, Comm–Pac filed a complaint against the City, seeking (1) a declaratory judgment that the City violated the Procurement Code (HRS Chapter 103D) when the City added CPE as Parsons's subconsultant for the City's transit project after evaluation of prospective service providers had been completed (count I), and (2) $362,000.00 in damages as a remedy for the City's alleged tortious interference with Comm–Pac's prospective business advantage (count II). On February 9, 2006, the City filed a motion to dismiss Comm–Pac's complaint. On February 14, 2006, Comm–Pac filed a motion for partial summary judgment as to count I.

On April 13, 2006, after hearing arguments on both motions on March 29, 2006, the circuit court entered an order granting the City's motion to dismiss and denying Comm–Pac's motion for partial summary judgment (April 13, 2006 Order). On May 10, 2006, the circuit court entered final judgment in favor of the City and against Comm–Pac.

On May 19, 2006, the City filed a motion for fees and costs. On June 27, 2006, the circuit court dismissed the City's motion for fees and costs and amended its April 13, 2006

2. The State Comptroller explained his position:

HAR § 3–1–6 authorizes the Comptroller to issue a declaratory order as to the applicability of any statutory provision administered by the Department of Accounting and General Services ("DAGS") or any rule or regulation or order of the Comptroller. I have been advised that I have jurisdiction over statutes and rules administered by DAGS, but not over the Procurement Code because I do not administer the Procurement Code. The Procurement Code is administered by the Administrator of the State Procurement Office, the chief procurement officers, and the Procurement Policy Board.

The Procurement Policy Board, with the authority to "adopt rules, consistent with this chapter [103D], governing the procurement, management, control, and disposal of any and all goods, services, and construction," and "consider and decide matters of policy within the scope of this chapter [103D]," has the jurisdiction to administer Procurement Code matters [HRS § 103D–202]. Further, HRS § 103D–201(a) clearly provides: "There is hereby created **an autonomous state procurement policy board.**" The Board is attached to DAGS for administrative purposes only.

However, while the Procurement Policy Board has jurisdiction over matters involving

the Procurement Code with the power to audit and monitor the implementation of its rules and requirements of chapter 103D, HRS § 103D–202 specifically provides that the Board "Shall not exercise authority over the award or administration of any particular contract, or over any dispute, claim, or litigation pertaining thereto." This specific restriction, together with HRS § 103D–704's provision that the procedures and remedies provided under part VII of the Procurement Code and the rules adopted by the Procurement Board are the exclusive remedies available, support the conclusion that neither the Comptroller, nor the Procurement Policy Board, have jurisdiction to consider the Petition. The review sought appears to be an appeal of the City's action in the guise of a petition for a declaratory ruling.

Although the Comptroller and the Procurement Policy Board do not have jurisdiction to consider this petition, the issues presented by the petition may be appropriate for the Administrator of the State Procurement Office to address. If you wish to pursue the issues raised by the Petition, the Administrator of the State Procurement Office would be the appropriate official to address those questions.

Order by clarifying that it was dismissing both Comm–Pac's complaint and Comm–Pac's motion for partial summary judgment (Amended Order). Specifically, the circuit court adjudged and ordered as follows:

(1) HRS § 103D–704 provides for exclusive remedies with regard to aggrieved persons in connection with the solicitation or award of a contract and has broad application as a part of the Procurement Code (HRS Chapter 103D).

(2) The Hawaii Supreme Court in the cases of *CARL Corporation v. Dept. of Education,* 85 Hawai'i 431, 946 P.2d 1 (1997) and *Nihi Lewa, Inc. v. Department Of Budget And Fiscal Servs.,* 103 Hawai'i 163, 80 P.3d 984 (2003) has made it absolutely clear that it wants to construe the Procurement Code such that the governmental contracting bodies are able to award contracts and end litigation contesting such awards, consistent with the terms of said Procurement Code.

(3) It is inconsistent therefore to allow subcontractors or sub-consultants to bring legal actions for judicial review outside of the Procurement Code procedures for matters involving their subcontracts pursuant to the solicitation or award of government prime contracts.

(4) Claims of subcontractors, or subconsultants can be brought under the Procurement Code by the contractor that received the contract and for whom they were sub-consultants or subcontractors.

(5) Therefore, this Court grants the [City's] Motion to Dismiss [Comm–Pac's] Complaint with prejudice and dismisses [Comm–Pac's] Motion for Summary Judgment.

Comm–Pac filed its notice of appeal on June 28, 2006.

## II.

■■■■ Comm–Pac argues that the circuit court erred when it granted the City's motion to dismiss Comm–Pac's complaint with prejudice and dismissed Comm–Pac's motion for partial summary judgment in its Amended Order. The circuit court did not reach the merits of Comm–Pac's claims, but ruled that sub-consultants were barred from seeking judicial review of their claims based on the language of the statute governing the procurement process and the interpretive case authority.[3] The dispositive issue presented in this case, therefore, is whether HRS § 103D–704 (Supp.2008), the "exclusive remedy" provision of HRS Chapter 103D, the Hawaii Public Procurement Code (Procurement Code), bars Comm–Pac, a sub-consultant, from bringing a lawsuit against the City seeking damages sounding in tort for injury suffered as a result of the City's alleged violations of the Procurement Code. We hold that it does.

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

*'Ōlelo: The Corp. for Cmty. Television v. Office of Info. Practices,* 116 Hawai'i 337, 344, 173 P.3d 484, 491 (2007) (citations omitted).

Pertinent to this appeal, Part VII of the Procurement Code, entitled "Legal and Contractual Remedies," sets out the procedure for resolving a variety of problems that may arise during the procurement process. Under HRS §§ 103D–701 through 103D–703 (Supp.2008), the chief procurement officer[4] is

---

3. Comm–Pac does not make a separate argument on appeal regarding the circuit court's dismissal of its claim for declaratory relief. Therefore, we consider only whether HRS § 103D–704 bars Comm–Pac's claim for tortious interference with a prospective business advantage.

4. HRS § 103D–203 (Supp.2008) currently provides, as it did at the time the City issued the RPS, in relevant part, as follows:

(b) The chief procurement officers for each of the several counties shall be:

vested with the authority to resolve protests of contract solicitations and awards under HRS § 103D–701; suspend or prohibit a person's ability to receive or perform a public works contract under HRS § 103D–702; and resolve contract and breach controversies under HRS § 103D–703.[5]

Section 704 of the Procurement Code states:

> The procedures and remedies provided for in this part, and the rules adopted by the policy board, *shall be the exclusive means* available for persons aggrieved in connection with the solicitation or award of a contract, a suspension or debarment proceeding, or in connection with a contract controversy, to resolve their claims or differences. The contested case proceedings set out in chapter 91 shall not apply to protested solicitations and awards, debarments or suspensions, or the resolution of contract controversies.

HRS § 103D–704 (emphasis added). This provision tracks the disputes and associated remedies that are provided for in HRS §§ 103D–701 through 103D–703 and unambiguously states that the remedies are "the exclusive means available" for those "aggrieved in connection with" specific areas—solicitation or award of a contract, a suspension or debarment proceeding, or "a contract controversy"—to "resolve their claims or differences." Thus, the plain language of HRS § 103D–704 precludes resort to other remedies for injuries that arise in connection with those specified areas.

Ordinarily, this would end our inquiry. However, Comm–Pac argues that it is not precluded from bringing this action by the plain language of HRS § 103D–704 because such a construction would be contrary to the intent of the legislature in enacting the Procurement Code. We are mindful that it is our responsibility to give effect to the intent of the legislature in construing statutes brought before us. *'Ōlelo*, 116 Hawai'i at 344, 173 P.3d at 491 ("our foremost obligation [is] to ascertain and give effect to the intention of the legislature" (citations omitted)). However, we are not convinced that giving effect to the plain language of HRS § 103D–704 is inconsistent with the legislative intent in enacting the Procurement Code.

The legislature included a substantial statement of intent when it enacted Act 8 in 1993 and adopted the original Procurement Code:

> The legislature finds that there is a need to improve and update the State's laws relating to government procurement.
>
> It is the legislature's intent that there be a single source of public procurement policy to be applied equally and uniformly to the State and counties. This Act shall apply to the procurement practices of all entities created by the State's and counties' constitution, charters, statutes, ordinances, administrative rules, or executive orders, including the office of Hawaiian affairs, and the departments, commissions, councils, boards, bureaus, committees, institutions, authorities, legislative bodies, agencies, government corporations, or other establishment of the State or its several counties.
>
> It is the policy of the State to ensure the fair and equitable treatment of all persons who deal with the procurement system of the State and counties. Because public employment is a public trust, public employees must discharge their duties impar-

(1) The executive branch—the respective finance directors of the several counties, except as provided in paragraphs (3) and (4);
....
(3) The Honolulu, Kauai, and Maui boards or departments of water supply—the managers and chief engineers of the respective boards or departments of water supply as designated by county charter; and
(4) The Hawaii board of water supply—the manager of the board of water supply as designated by county charter;
provided that the chief procurement officers designated under paragraphs (1), (2), (3), and

(4) shall not exercise their powers or duties over contracting in a manner contrary to the respective county's charter, ordinances, or rules adopted in accordance with chapter 91.

5. In 1997, the legislature added HRS § 103D–703.5 to deal with defaults in performance by a contractor by acceptance of payments from a surety bond. 1997 Haw. Sess. Laws Act 167 § 1 at 325. This provision was further amended in 1999 to broaden the source of payments. 1999 Haw. Sess. Laws Act 149 § 17 at 479.

tially to assure fair competitive access to governmental procurement by responsible contractors. Public employees shall conduct themselves in a manner that fosters public confidence in the integrity of the State procurement process. No comptroller, chief procurement officer, purchasing agency head, procurement officer, or employee whose duties include purchasing shall use or attempt to use one's official position to secure or grant unwarranted privileges, exemptions, or advantages or exhibit any favoritism or prejudice to any prospective bidder or contractor.

It is the policy of the State to foster broad-based competition. Full and open competition shall be encouraged. With competition, the State and counties will benefit economically with lowered costs. Therefore, it is the legislature's intent to maintain the integrity of the competitive bidding and contracting process by discouraging the State and counties from making changes to contracts once the contracts are awarded. If any contract needs to be amended, compelling reasons must exist for making the changes.

It is the policy of the State to ensure fiscal integrity, responsibility, and efficiency in the procurement process. Goods, services, and construction shall be purchased at fair and reasonable prices. *However, if there are any disputes regarding the bidding and awarding of contracts, it is the legislature's intent to encourage all parties to settle their differences quickly through established administrative procedures.*

The purpose of this Act is to promote economy, efficiency, and effectiveness in the procurement of goods and services, and the construction of public works for the State and counties, by:

(1) Simplifying, clarifying, and modernizing the law governing procurement;

(2) Requiring the continued development of procurement policies and practices;

(3) Making the procurement laws of the State and counties as consistent as possible;

(4) Ensuring the fair and equitable treatment of all persons who deal with the procurement system of the State and counties;

(5) Providing increased economy in procurement activities and maximizing to the fullest extent practicable the purchasing value of public funds;

(6) Fostering effective broad-based competition within the free enterprise system;

(7) Providing safeguards for the maintenance of a procurement system of quality and integrity; and

(8) Increasing public confidence in the procedures followed in public procurement.

1993 Haw. Sp. Sess. Laws Act 8, § 1 at 37–38 (emphasis added).

Thus, while it is clear that the legislature enacted the Procurement Code to "provide 'fair and equitable treatment of all persons dealing with the government procurement system'" as Comm–Pac argues, it is also true that the legislature chose to do so by creating a unitary body of laws to govern and "promote economy, efficiency, and effectiveness" in the procurement process. As part of this goal, the legislature intended that where disputes arise regarding the bidding and awarding of contracts, the parties "settle their differences quickly *through established administrative procedures.*" *Id.*[6] Based on this statement of purpose, we cannot say that limiting the parties to remedies specified in the Procurement Code[7] is inconsistent with the legislature's goal of a fair and speedy procurement process. *See Nihi Lewa, Inc. v. Dept. of Budget & Fiscal Svcs.*, 103 Hawai'i

6. We note that of the seventeen states adopting the Model Procurement Code, Hawai'i is one of five states that added an "exclusive remedies" provision of some kind. *See* Alaska Stat. § 36.30.690 (2009), Ariz.Rev.Stat. Ann. § 41–2615 (2009), Mont.Code Ann. § 18–4–242 (2008), and S.C.Code Ann. § 11–35–4210 (2008).

7. Comm–Pac agrees that, as its claims arose from the solicitation and award of a contract, HRS § 103D–701 provides the "relevant procedures."

163, 167, 80 P.3d 984, 988 (2003) (observing that "[t]he overall framework of the Hawai'i Public Procurement Code indicates that the Legislature intended to create an expeditious process for resolving disputes over the awarding of contracts" and that "[u]nder most circumstances, public projects cannot proceed while a protest is pending.").

Nor does Comm–Pac's argument that this construction would leave Comm–Pac without a remedy convince us otherwise. We note that Comm–Pac was on notice, by the terms of the Procurement Code itself, that it could not, in its own right, bring a direct challenge to the procurement process in the event it disputed the actions of the procurement agency. The legislative scheme encompasses the notion that challenges will be brought by the primary parties in the process—the contractor or prospective bidder or offeror—a fact that Comm–Pac acknowledges. HRS § 103D–701(a).

Finally, Comm–Pac argues that the action of the City in this case—adding an unevaluated sub-consultant to the selected team—"presents a circumstance that the legislature did not anticipate when it crafted the Procurement Code remedies." To the extent this is true, Comm–Pac is free to bring this matter to the attention of the legislature for its consideration.

Affirmed.