**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002936
29-SEP-2016
08:13 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

ALII SECURITY SYSTEMS, INC., Plaintiff-Appellant, v.
PROFESSIONAL SECURITY CONSULTANTS; PROFESSIONAL SECURITY
CONSULTANTS, INC., Defendants-Appellees, and
DOE DEFENDANTS 1-10, Defendants

NO. CAAP-13-0002936

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-0430)

SEPTEMBER 29, 2016

FOLEY, PRESIDING JUDGE, LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY FOLEY, J.

Plaintiff-Appellant Alii Security Systems, Inc. (**Alii**)
appeals from the October 24, 2012 "Order Granting Defendants
Professional Security Consultants and Professional Security
Consultants, Inc.'s Motion To Dismiss Or, In The Alternative, For
Summary Judgment, Filed August 21, 2012" (**Order**); and July 24,
2013 Final Judgment (**Judgment**), both entered in the Circuit Court
of the First Circuit[1] (**circuit court**).

In the underlying action, Alii sought damages from
Defendants-Appellees Professional Security Consultants and

---

[1] The Honorable Karl K. Sakamoto presided.

Professional Security Consultants, Inc. (together, **PSC**)[2] for PSC's alleged tortious interference with Alii's contractual relationship and tortious interference with Alii's prospective business advantage with the Department of Transportation, State of Hawaiʻi (**DOT**). PSC moved to dismiss the complaint, arguing that Alii failed to state a claim upon which relief could be granted and that the claims were statutorily barred. The circuit court granted the motion. On appeal, Alii seeks to have the Order vacated and the Judgment set aside.

## I. BACKGROUND

In July of 2008, the DOT awarded Alii a three-year contract to provide security services in Oahu's commercial harbors. The contract term commenced in September of 2008, terminated in September of 2011, but provided for two optional one-year extensions. In late 2010, Alii met with DOT Operations Supervisor Bill Davis (**Davis**) to discuss the manner of exercising the option for the first one-year extension. In this meeting, Davis allegedly told Alii that the contract required Alii to write a letter to the DOT district manager seeking written confirmation of the extension. Davis allegedly stated that he expected "the extension would be routinely granted because of Alii['s] satisfactory performance." Alii thereafter sent a letter to DOT documenting the "agreement" to extend the contract and requesting "confirmation of the extension."

In a June 22, 2011 meeting, DOT informed Alii that instead of being renewed, the contract would go out for bid because of "material changes[3] and a significant increase in the scope of the contract." DOT thereafter offered to extend the contract with Alii for a 6 to 9 month period while the new contract was being assembled, and Alii agreed. The contract was

---

[2] "Professional Security Consultants, Inc." and "Professional Security Consultants" are separately registered entities sharing corporate officers. According to PSC, Professional Security Consultants is the trade name under which Professional Security Consultants, Inc. conducts business.

[3] According to Alii, the changes included, *inter alia*, the addition of a third class of security guard, the removal of reference to Kewalo Basin as one of the commercial harbor facilities covered by the contract, the addition of 33 Code of Federal Regulations (C.F.R.) § 105 certification, and the removal of a background check requirement for security guards.

set to terminate around April 2012. On or about July 25, 2011, DOT issued its request for proposals for the new Harbors Contract. The contract was to be awarded to "the lowest responsive and responsible bidder whose proposal complies with all the prescribed requirements." Alii and PSC were two of thirteen bidders. The contract was awarded to PSC on November 1, 2011.[4] Alii was the second-lowest bidder.

On November 30, 2011, Alii filed a formal bid protest with the director of DOT challenging the award pursuant to Hawaii Revised Statutes (**HRS**) § 103D-701 (2012 Repl.).[5] The protest was denied as untimely and lacking sufficient content. Alii requested a hearing with the Office of Administrative Hearings of the Department of Commerce and Consumer Affairs (**DCCA**) to contest the denial of its protest. The hearings officer affirmed the denial in its February 24, 2012, "Findings of Fact, Conclusions of Law, and Decision" (**FOFs/COLs and Decision**). Alii appealed the FOFs/COLs and Decision to the circuit court,[6] which affirmed the hearings officer's denial on the grounds of inadequate contents of the protest. Alii then appealed the circuit court's decision to this court, which affirmed the circuit court decision. See Alii Sec. Sys., Inc., v. Dep't. of Transp., No. CAAP-12-0000790 (App. Feb. 13, 2014) (mem).

A. PROCEDURAL HISTORY

Alii filed the present action on February 14, 2012, alleging three counts against PSC: Count I, Tortious Interference with Contractual Relations (**TICR**)[7]; Count II, Tortious

---

[4]     Although the contract award was made on November 1, 2011, the contract term does not commence until the date indicated on the Notice to Proceed issued by the State.

[5]     HRS § 103D-701 provides in relevant part: "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation."

[6]     The Honorable Rhonda A. Nishimura presided.

[7]     Under Hawai'i law, the elements of a TICR claim are:

> (1) a contract between the plaintiff and a third party; (2)
> the defendant's knowledge of the contract; (3) the
> defendant's intentional inducement of the third party to
> breach the contract; (4) the absence of justification on
> (continued...)

Interference with Prospective Business Advantage (**TIPBA**)[8]; and Count III, punitive damages.[9]  Alii alleged that PSC

> disrupted [Alii's] existing contractual relationship and its prospective business advantage with the DOT by, inter alia, knowingly misrepresenting possessing necessary qualifications, making materially false statements to the DOT, making materially false statements to the [DCCA], falsely representing the capability to perform the requirements of the successor contract, falsely, representing being a business entity licensed to transact business in Hawaii, providing false Hawaii principal office addresses, inducing the DOT to terminate its Contract with [Alii], and inducing the DOT to award the successor contract to [PSC].

As to Count I, Alii alleged that the three-year security contract created a contractual relationship between Alii and DOT, that PSC had knowledge of the contract, that PSC intentionally induced DOT to breach the contract, that there was no justification for PSC's actions, that DOT breached the contract, and that Alii suffered resulting damages.

As to Count II, Alii alleged that it had a "business relationship and/or prospective advantage or expectancy" with DOT "which was sufficiently definite, specific, and capable in the sense that at all material times there was a reasonable probability of it maturing into a contract" providing "future economic benefit" to Alii, that PSC had knowledge of the expectancy, that PSC intentionally interfered with the

---

[7](...continued)
> defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff.

Lee v. Aiu, 85 Hawai'i 19, 32, 936 P.3d 655, 668 (1997) (quoting Weinberg v. Mauch, 78 Hawai'i 40, 50, 890 P.2d 277, 287 (1995)).

[8]     Under Hawai'i law, the elements of a TIPBA claim are:

> (1) a prospective contractual relationship existed between the plaintiff and a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally interfered with the plaintiff's prospective contract; (4) the defendant acted without proper justification; (5) the defendant's interference caused the third party to fail to consummate the prospective contract with the plaintiff; and (6) the defendant's interference caused damages to the plaintiff.

Kutcher v. Zimmerman, 87 Hawai'i 394, 406, 957 P.2d 1076, 1088 (App. 1998) (footnotes omitted).

[9]     The circuit court  recognized that Count III is not a separate cause of action and did not treat it as so.

4

expectancy, that the impairment of the expectancy was the legal and proximate result of the interference by PSC, and that Alii suffered resulting damages.

On August 21, 2012, PSC filed a motion to dismiss the complaint under Hawai'i Rules of Civil Procedure (**HRCP**) Rule 12(b)(6), or in the alternative, for summary judgment under HRCP Rule 56 (**Motion to Dismiss or for Summary Judgment**).[10] PSC contended that Count I "fail[ed] to allege fact [sic] sufficient to establish two of the necessary elements of the claim for tortious interference with contract[ual relations]," and that both Counts I and II are barred by the exclusivity provisions of HRS § 103D-704 (2012 Repl.) (the Exclusive Remedy Provision). PSC attached several documents and exhibits in support of its Motion to Dismiss or for Summary Judgment. In a September 14, 2012 reply memorandum in support of the Motion to Dismiss or for Summary Judgment, PSC subsequently withdrew the HRCP Rule 56 motion for summary judgment portion, stating that "it is unnecessary for the court to consider matters outside of the pleadings in order to confirm that the Complaint fails to state a claim upon which relief can be granted and should be dismissed" under HRCP Rule 12(b)(6). In the reply memorandum, PSC limited the basis of the HRCP Rule 12(b)(6) portion of the Motion to Dismiss or for Summary Judgment to two arguments: (1) that Alii failed to state a valid TICR claim because "the nonrenewal of [Alii's] prior contract does not constitute a breach of contract" and (2) that the TIPBA claim was barred by the exclusive remedy provisions of HRS § 103D-704. After a September 20, 2012 hearing on PCS's Motion to Dismiss or for Summary Judgment, the circuit court issued the Order granting the motion to dismiss and held:

> The Court having reviewed all memoranda, declarations and affidavits, and exhibits submitted thereto, having heard and considered the arguments of counsel, being fully apprised of the circumstances of the case and having viewed the record and construing the allegations of the Complaint in the light most favorable to [Alii], finds and declares as follows:

---

[10]     PSC also raised the defenses of claim preclusion and issue preclusion in its motion, however, these issues were not addressed by the court in its Order.

Plaintiff's Motion[11] is granted as to Count I of the Complaint on the ground that the Complaint fails to allege the necessary facts to sustain a cause of action for [TICR].

Plaintiff's Motion [(See n.11)] is granted as to Count II of the Complaint because [Alii's] claim for damages relating to a solicitation or award is barred by the exclusivity provisions of Section 103D-704 of the [HRS].

. . . .

HRS § 103D-101[(b)] provides that, "Any actual or prospective bidder, offeror, (contractor), or business taking part in the conduct of public procurement, shall act in good faith to practice purchasing ethics[.]"

Furthermore, HRS § 103D-704 provides, "The procedures and remedies provided for in this part, and the rules adopted by the [p]olicy [b]oard, shall be the exclusive means available for persons aggrieved in connection with the solicitation or award of a contract, a suspension or debarment proceeding, or in connection with a contract controversy, to resolve their claims or differences[.]"

The Court determines that HRS § 103D imposes duties not only on government officials but also any prospective bidder. Because [Alii's] Complaint seeks relief in connection with the solicitation of the award of .a contract, [Alii's] exclusive means of remedy are governed by HRS § 103D. As such, [Alii's] claims for damages are barred by the exclusivity provisions of HRS § 103D—704.

Alii filed this timely appeal[12] on August 21, 2013.

**B. POINTS OF ERROR ON APPEAL**

On appeal, Alii contends the circuit court committed

(1) reversible error in treating PSC's motion as an HRCP Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than as an HRCP Rule 56 motion for summary judgment;[13]

(2) reversible error in concluding that Alii's claims

---

[11] The circuit court's Order entered on October 24, 2012, dismisses all of Alii's claims with prejudice. The language of the order mistakenly describes PSC's motion as "Plaintiff's Motion" rather than "Defendant's Motion," but the circuit court's error is harmless because the error was obviously typographical and the circuit court's analysis otherwise clearly supports dismissal of Alii's claims. See HRCP Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[12] The original Final Judgment was filed on February 20, 2013, which Alii appealed on March 21, 2013. However, the appeal was dismissed for lack of jurisdiction under Jenkins v. Cades Schutte Fleming & Wright), 76 Hawaiʻi 115, 119, 869 P.2d 1334, 1338 (1994). A second Final Judgment was accordingly entered on July 24, 2013.

[13] For reasons that will become clear in this opinion, we need not address this point on appeal.

were barred by the Exclusive Remedy Provision of the Procurement Code; and

(3) reversible error in dismissing Alii's TICR claim for failure to allege the necessary facts to sustain a cause of action.

## II. STANDARD OF REVIEW

> A trial court's ruling on [an HRCP Rule 12(b)(6)] motion to dismiss is reviewed de novo. The court must accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff; dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief.

Wong v. Cayetano, 111 Hawai'i 462, 476, 143 P.3d 1, 15 (2006) (citations, internal quotation marks, and emphasis omitted).

"On appeal, the grant or summary judgment is reviewed de novo." First Ins. Co. of Hawaii v. A&B Props., 126 Hawai'i 406, 413, 271 P.3d 1165, 1172 (2012) (quoting, Nuuanu Valley Ass'n v. City & Cty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 413–14, 271 P.3d at 1172-73 (brackets in original) (quoting Nuuanu Valley, 119 Hawai'i at 96, 194 P.3d at 537).

## III. DISCUSSION

A.   **The circuit court erred in concluding that Alii's claim for tortious interference with prospective business advantage was barred by the Exclusive Remedy Provision of HRS § 103D-704**

Alii contends the circuit court erred when it dismissed Count II (TIPBA) as barred by the Exclusive Remedy Provision found in HRS § 103D-704. Alii argues that the "exclusivity" provision only precludes civil actions for damages against a government agency.

Statutory construction is guided by the following

7

principles:

> [When construing a statute,] our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> . . . Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> [The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

Kapuwai v. City & Cty. of Honolulu, 119 Hawai'i 304, 308, 196 P.3d 306, 311 (App. 2008), vacated in part on other grounds by Kapuwai v. City & Cty. of Honolulu, 121 Hawai'i 33, 211 P.3d 750 (2009) (quoting Lingle v. Hawaii Emps. Ass'n, AFSCME, Local 152, 107 Hawai'i 178, 183 111 P.3d 587, 592 (2005)).

HRS chapter 103D is the Hawai'i Public Procurement Code (**Procurement Code**). Part VII of the Procurement Code describes the proper administrative remedies for challenging government contract awards. HRS §§ 103D-701 to 103D—713. The Exclusive Remedy Provision holds, in relevant part:

> **§103D-704 Exclusivity of remedies.** The procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the solicitation or award of a contract, a suspension or debarment proceeding, or in connection with a contract controversy, to resolve their claims or differences.

The issue presented by this case is whether the statutory language bars civil actions.[14]

HRS § 103D-704 does not expressly preclude civil actions. Disputes over solicitations and awards fall under HRS

---

[14] The legislature has expressly stated that circuit courts have, subject matter jurisdiction over all "civil actions and proceedings" and "it is presumed that the courts have jurisdiction, unless the legislature "expressly" provides otherwise by statute." Alakai Na Keiki, Inc. v. Matayoshi, 127 Hawai'i 263, 279, 277 P.3d 988, 1004 (2012) (emphasis added) (citing HRS § 603—21.5). The Hawai'i Supreme Court has also held that "[a] statutory remedy is, as a rule, merely cumulative and does not abolish an exiting common law remedy unless so declared in express terms or by necessary implication." Watson v. Brown, 67 Haw. 252, 256, 686 P.2d 12, 15 (1984) (emphasis added).

§ 103D-701, which provides a method for bidders to challenge an agency's processes and decisions. Suspension and debarment proceedings fall under HRS § 103D-702 (2012 Repl.), which allow an agency to remove a person from consideration of future awards. Contract controversies fall under HRS § 103D-703 (2012 Repl.), but is specific to controversies "between a governmental body and a contractor." A private tort claim between competing bidders does not fit into any of those categories, and it does not appear that the statutory protest proceedings provide an adequate means of resolving claims between competing bidders or that the chief procuring officer would even have jurisdiction to hear such a claim at all. See HRS § 103D-701(a).

Part VII of the Procurement Code addresses the authority and responsibilities of the contracting agency, provides the procedures for reviewing challenges to the award and solicitation processes, and prescribes the remedies for the resolution of such challenges. It does not address the resolution of claims or injuries arising between competing bidders. The legislature included a statement of intent in adopting the original Procurement Code:

> SECTION 1. The legislature finds that there is a need to improve and update the State's laws relating to government procurement.
>
> . . . .
>
> The purpose of this Act is to promote economy, efficiency, and effectiveness in the procurement of goods and services, and the construction of public works for the State and counties, by:
>
> (1) Simplifying, clarifying, and modernizing the law governing procurement;
>
> (2) Requiring the continued development of procurement policies and practices;
>
> (3) Making the procurement laws of the State and counties as consistent as possible;
>
> (4) Ensuring the fair and equitable treatment of all persons who deal with the procurement system of the State and counties;
>
> (5) Providing increased economy in procurement activities and maximizing to the fullest extent practicable the purchasing value of public funds;
>
> (6) Fostering effective broad-based competition within the free enterprise system;

(7)     Providing safeguards for the maintenance of a
        procurement system of quality and integrity; and

(8)     Increasing public confidence in the procedures
        followed in public procurement.

1993 Haw. Sess. Laws, Spec. Sess. Act 8, § 1 at 37—38 (emphasis added). In sum the purpose of the Procurement Code is to address the manner in which an agency's bids are requested, received, and awarded ensuring the fairness of government conduct and to promote "economy, efficiency, and effectiveness in the procurement of goods and services" by the State and county agencies.

The legislature's desire for a quick and economic resolution of solicitation and award disputes is reflected in the Procurement Code's protest process. See HRS § 103D—701(a) (allowing only five working days for the filing of a protest); HRS § 103D-701(f) (granting the chief procurement officer authority to award the contract without delay, despite a timely protest, in order to protect State interests).

> The overall framework of the Hawaiʻi Public Procurement code indicates that the Legislature intended to create an expeditious process for resolving disputes over the awarding of contracts. See CARL Corp. v. State, 85 Hawaiʻi 431, 453, 946 P.2d 1, 24 (1997) ("The [Procurement] Code both shortens deadlines for filing protests and applications for review and expedites the administrative hearings process."). Under most circumstances, public projects cannot proceed while a protest is pending. See HRS § 103D-709[(g) (2012 Repl.)] ("No action shall be taken on . . . an award of a contract while a proceeding is pending[.]" . . . [D]isputes over the award of contracts will necessarily result in delays that will affect public works and . . . the Legislature expressed a clear intent tp expedite the process by which such disputes are resolved[.]

Nihi Lewa, Inc. v. Dep't of Budget and Fiscal Servs., 103 Hawaiʻi 163, 167-68, 80 P.3d 984, 988-89 (2003).

Construing the Exclusive Remedy Provision to preclude suits between competing bidders would not serve the legislative intent behind the Procurement Code. Precluding suits between bidders would not provide "increased economy in procurement activities and maximiz[e] to the fullest extent practicable the purchasing value of public funds" because the administrative agency would not be a party litigant or be accountable to pay damages. 1993 Haw. Sess. Laws, Spec. Sess. Act 8, § 1 at 38. The efficiency of the procurement process would not be

hindered because a suit for damages would not delay performance of the contract.

Alii does not challenge the award of the contract, but the alleged tortious conduct of its competitor, PSC. Alii made this clear when it argued before the circuit court that "[w]e haven't contended, nor do we contend . . . that any outcome in this case can affect the administration of the DOT's contract currently being administered or performed by PSC." Because Alii does not seek relief from an agency decision, the Procurement Code neither provides a remedy nor bars a remedy for Alii's alleged injuries.

PSC points to HRS § 103D-101(b) (2012 Repl.), a part of the Procurement Code that imposes ethical duties on bidders, in support of its argument that the Procurement Code applies to both public entities and to bidders. HRS § 103D-101(b) provides:

§103D-101 **Requirements of ethical public procurement.**

. . . .

(b) Any actual or prospective bidder, offeror, [contractor], or business taking part in the conduct of public procurement, shall act in good faith to practice purchasing ethics, and when applicable, display business integrity as a responsible offeror through the public procurement process, including but not limited to the following:

    (1)    Avoiding the intent and appearance of unethical behavior or business practices;

    (2)    Refraining from any activity that would create the appearance of impropriety or conflicts of personal interest and the interests of the State or counties;

    (3)    Identifying and eliminating any conflicts of interest; and

    (4)    Ensuring that all persons are afforded an equal opportunity to compete in a fair and open environment.

However, the duties described are clearly directed at preserving transparency and avoiding the appearance of favoritism, and the limited means of enforcement of these duties are insufficient to address and resolve the variety of injuries that may occur solely between competing bidders.

The ABA Model Procurement Code has been adopted by seventeen states. Commc'ns-Pac., Inc. v. City & Cty. of

Honolulu, 121 Hawai'i 527, 532 n.6, 221 P.3d 505, 510 n.6 (App. 2009). Of the seventeen states, "Hawai'i is one of five states that added an 'exclusive remedies' provision of some kind." Id. The four other states' exclusive remedy provisions have language specifying that they apply to actions against the state or procuring agency; none have interpreted their exclusive remedy provisions to preclude suits between competing bidders. See Alaska Stat. § 36.30.690 (2009)[15]; Ariz. Rev. Stat. Ann. § 41-2615 (2009); Mont. Code Ann. § 18-4-242 (2008); and S.C. Code Ann. § 11-35-4210 (2008).

The Procurement Code as a whole, taking into account the legislative history and context, suggests that the Exclusive Remedy Provision is only intended to limit remedies that a bidder can bring against the governmental agency. Therefore, the circuit court erred in dismissing Count II.

**B.    The circuit court properly held that Alii failed to state a claim for TICR upon which relief can be granted**

Alii claims that the circuit court erred when it dismissed Count I (TICR), arguing that the cause of action was adequately pled in the complaint and that Alii produced sufficient evidence to satisfy its burden to overcome the motion to dismiss. In its complaint, Alii alleged in Count I that PSC "disrupted" Alii's "existing contractual relationship" with DOT. PSC moved to dismiss the complaint, arguing, "from the face of the Complaint[,] it is clear that DOT did not 'breach' its contract with [Alii]" because the contract term had expired, and that "DOT's decision not to [renew the contract] cannot be characterized as a breach." Granting PSC's motion, the circuit court dismissed this Count I "on the ground that the Complaint failed to allege the facts necessary to sustain a cause of action for [TICR]." Alii argues that "based on the allegations of the complaint taken as a whole, the DOT's act of terminating [Alii's] contract constituted a breach because it violated its duty of good faith and fair dealing . . . ."

---

[15]    The Alaska Supreme Court has explicitly held that its exclusive remedy provision allows private causes of action. See J&S Servs., Inc. v. Tomter, 139 P.3d 544, 548-49 (Alaska 2006) (permitting tort claims against individual public officials engaging in deliberate acts of misconduct).

> A TICR cause of action requires the plaintiff to prove:
>
> 1) a contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional inducement of the third party to breach the contract; 4) the absence of justification on the defendant's part; 5) the subsequent breach of the contract by the third party; and 6) damages to the plaintiff.

Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Hawai'i 35, 45, 122 P.3d 1133, 1143 (App. 2005), as corrected (Oct. 13, 2005). To prevail on a claim of TICR under Hawai'i law, the "plaintiff must show that a breach has occurred . . . . It is quite apparent that under Hawai'i law a breach is required." Id. at 44, 122 P.3d at 1142 (first emphasis in original) (declining to follow the Restatement (Second) of Torts - which does not require a breach, but only "non-performance" - as the law of TICR).

In Hawai'i, commercial contracts are subject to a statutory duty to perform in good faith in their performance and execution. HRS § 490:1-304 (2008 Repl.) ("Every contract or duty within this chapter imposes an obligation of good faith in its performance and enforcement."); See Long v. JP Morgan Chase Bank, Nat'l. Ass'n, 848 F. Supp. 2d 1166, 1180 (D. Haw. 2012). Under the obligation of good faith, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." Best Place, Inc. v. Penn. Am. Ins. Co., 82 Hawai'i 120, 123-24, 920 P.2d 334, 337-38 (1996). However, "Hawaii law generally does not recognize tort claims for breach of good faith or fair dealing outside the insurance context." See Gold Refinery, LLC v. Aloha Island Gold, LLC, 2012 WL 518396 at *7 (D. Haw. Feb. 15, 2012).

Alii alleges in paragraph five of its complaint that its contract with DOT was for three years "with options to extend the contract for one or two additional twelve month periods." As such, until the twelve month extension was agreed upon, any such indications or promises by DOT of an intent to renew the contract for an additional term did not conclude a bargain or form a contract. See Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 324, 47 P.3d 1222, 1237 (2002) (quoting Restatement (Second) of Contracts § 26 at 75 (1981) ("A manifestation of willingness

13

to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.")).  As no contract was formed, no breach could occur.  The circuit court properly dismissed Alli's TICR claim.

## IV.  CONCLUSION

Therefore, we vacate in part and affirm in part the October 24, 2012 "Order Granting Defendants Professional Security Consultants and Professional Security Consultants, Inc.'s Motion To Dismiss Or, In The Alternative, For Summary Judgment, Filed August 21, 2012"; and July 24, 2013 Final Judgment, both entered in the Circuit Court of the First Circuit and remand this case for further proceedings consistent with this opinion.


On the briefs:
Christopher A. Dias
(of counsel)
for Plaintiff-Appellant.

Jeffrey A. Griswold
(Lyons, Brandt, Cook & Hiramatsu)
for Defendants-Appellees.

14