
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**SH ENTERPRISES, INC.,**
Plaintiff-Appellant,

**v.**

**TERRITORY OF GUAM; GENERAL SERVICES AGENCY, DEPARTMENT OF ADMINISTRATION; and the OFFICE OF PUBLIC ACCOUNTABILITY,**
Defendants-Appellees.

Supreme Court Case No. CVA24-001
Superior Court Case No. CV0338-21

## OPINION

## Cite as: 2025 Guam 10

Appeal from the Superior Court of Guam
Argued and submitted on October 18, 2024
Hagåtña, Guam

Appearing for Plaintiff-Appellant:
Vanessa L. Williams, *Esq.*
Stephanie E. Mendiola, *Esq.*
Law Office of Vanessa L. Williams, P.C.
GCIC Bldg.
414 W. Soledad Ave. Ste. 500
Hagåtña, GU 96910

Appearing for Defendant-Appellee
Office of Public Accountability:
Joseph B. McDonald, *Esq.*
McDonald Law Office LLC
173 Aspinall Ave. Ste. 207A
Hagåtña, GU 96910


**E-Received**
12/15/2025 2:58:17 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]     Plaintiff-Appellant SH Enterprises, Inc. ("SH") appeals from a Decision and Order of the Superior Court affirming the debarment[1] of SH by Defendant-Appellee Office of Public Accountability ("OPA"). SH argues the trial court erred when it held that (1) the OPA had jurisdiction to debar SH in a procurement protest appeal, (2) the OPA did not violate SH's due process rights, and (3) that there was substantial evidence supporting the conclusion that SH violated certain statutory ethical provisions. SH asks this court to reverse the Superior Court's decision.

[2]     The OPA argues that it has jurisdiction to review decisions not to debar as an issue capable of repetition yet evading review. The OPA further argues that it did not violate SH's due process rights because it followed statutory procedure, and that there was substantial evidence supporting the OPA's conclusion that SH violated statutory ethical provisions.

[3]     We conclude that the Superior Court erred when it determined that the OPA had jurisdiction to review the Chief Procurement Officer's ("CPO") decision not to debar. Since the OPA did not have jurisdiction over this matter, SH's remaining arguments are moot, and we decline to address them. We reverse.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[4]     SH and Basil Food Industrial Services Corporation ("Basil") are two contractors that provide food services to the Government of Guam. Both contractors submitted bids when the

---

[1] "Debarment is a statutory sanction utilized by the federal government and by some state and local units of government to disqualify bidders with a history of criminal behavior or significant contract violations from competing for the award of public contracts during a stated period of debarment." 1 Philip L. Bruner & Patrick J. O'Connor Jr., *Bruner & O'Connor Construction Law* § 2:121 (Nov. 2024 Update) (footnotes omitted).

General Services Administration ("GSA") issued Invitation for Bid ("IFB") No. GSA-056-19 for Nutrition Services for the Comprehensive Management, Operation, and Maintenance of Elderly Nutrition Programs ("*Manåmku'* meals IFB"). The *Manåmku'* meals IFB required bidders to submit several mandatory federal forms. The *Manåmku'* meals IFB provided that failing to complete these forms would "automatically disqualify the Bidder's submission." Record on Appeal ("RA"), tab 44 (Notice Submission R. & Submission R., May 29, 2024), Attach. 1 at 4 (OPA Dec., Dec. 11, 2020). One form, the B-4 certification, required bidders to disclose if they had been "debarred, suspended, declared ineligible or voluntarily excluded" from contracting with the government during the previous three years. *Id.* Despite receiving a "C" rating from the Department of Public Health and Social Services ("DPHSS"), which resulted in SH terminating an earlier contract, SH failed to disclose any debarment, suspension, or termination as part of its bid.

[5]     Because SH was the lowest responsive and responsible bidder, the GSA recommended awarding the contract to SH, subject to approval by the DPHSS director. The GSA informed SH and Basil of its intent to award the contract to SH. Basil protested the award, arguing that SH was not the lowest responsive, responsible bidder because SH had failed to disclose its "C" rating and subsequent termination of its contract with the GSA. The CPO, an arm of the GSA, denied Basil's protest, prompting Basil to appeal to the OPA.

[6]     While that appeal was pending, the Pacific Daily News reported that the Government War Claims Processing Center would be housed in the *Hakubotan* building. Because the building belonged to SH, Basil filed a Sunshine Act request with the Governor's office for any records related to the government's use of the *Hakubotan* building. As part of the government's Sunshine Act disclosures, Basil received a copy of a letter from SH to the Governor. The letter indicated

that SH was donating "temporary utilization" of the *Hakubotan* building to house the War Claims Processing Center. *Id.* at 7.

[7]     Basil submitted a second protest, arguing that SH had provided a favor to the government in violation of 5 GCA § 5630(d) and 2 Guam Administrative Rules and Regulations ("GAR") Division 4 § 11107(4), which prohibit contractors from giving gratuities to the government. Basil also requested that the CPO debar or suspend SH. The CPO denied this second protest.

[8]     SH submitted another bid on a separate matter: IFB No. GSA-001-20, for meal services at the Department of Corrections ("DOC"). The GSA awarded the DOC contract to SH. Basil then filed a second appeal with the OPA, asserting that SH should be debarred or suspended for violating the ethics code by giving the government a gratuity. The OPA consolidated the two appeals and held a hearing to determine (1) whether SH was the lowest responsive and responsible bidder and (2) whether to debar SH for providing a favor to the Governor's office. After the hearing, the OPA deconsolidated the appeals and issued separate decisions.

[9]     In the first appeal, the OPA concluded that "SH violated the Procurement Law Ethical Standards by allowing the government temporary use of the Hakubotan building as the War Claims Processing Center." RA, tab 44, Attach. 2 at 1-2 (OPA Dec., Apr. 27, 2021).

[10]     In the second appeal, the OPA issued SH an Order to Show Cause ("OSC") "why SH should not be debarred or suspended for violation of the Procurement Law Ethical Standards." *Id.* at 1. The OPA then held hearings on the OSC before issuing a written decision debarring SH. The OPA determined it had jurisdiction to review a decision not to debar and that SH had violated ethics provisions by giving a gift to the Government of Guam. The OPA debarred SH for one year.

[11]     SH then filed a Verified Complaint with the Superior Court, appealing the OPA's decision to debar SH for ethical violations.  SH argued that the OPA exceeded its statutory jurisdiction when it issued a debarment in a procurement appeal, that the OPA violated SH's due process rights when it failed to follow the debarment process outlined in the Procurement Law, and that the OPA's finding that SH violated the ethical rules was both arbitrary and capricious and incorrect as a matter of law.

[12]     The Superior Court affirmed the OPA's decision debarring SH.  The court held the OPA had jurisdiction to issue a debarment.  The Superior Court reasoned that because the OPA reviews the GSA's decisions *de novo*, and because the GSA has the power to debar, the OPA must also have that power.  Recognizing that the Public Auditor's decision is final unless arbitrary, capricious, or contrary to law, the Superior Court found no reason to disturb the OPA's findings.  SH timely appealed.

## II.  JURISDICTION

[13]     This court has jurisdiction over appeals from a final judgment in a civil action.  7 GCA §§ 3107, 3108(a) (2005); 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-47 (2025)).  The Superior Court's Decision and Order determining that the OPA had authority to review a decision not to debar is a final judgment.  It conclusively resolved that the OPA had authority to debar SH, that the OPA did not violate SH's rights, that using the *Hakubotan* building was an impermissible gratuity, and that no issues remain for the trial court to decide.

## III.  STANDARD OF REVIEW

[14]     This court reviews the legal conclusions of the Superior Court *de novo* and its factual findings for clear error.  *People v. Farata*, 2007 Guam 8 ¶ 14.  "We review *de novo* whether an

administrative body holds certain powers under its enabling statute . . . ." *Data Mgmt. Res., LLC v. Off. of Pub. Accountability*, 2013 Guam 27 ¶ 16 [hereinafter "*DMR*"].

[15]     The legal conclusions of the Public Auditor are entitled to great weight and the benefit of reasonable doubt, although they are not conclusive on any reviewing court. *Basil Food Indus. Servs. Corp. v. Guam*, 2019 Guam 29 ¶ 9 (citing 5 GCA § 5704(b) (2005)).  The OPA's factual findings will not be disturbed "unless arbitrary, capricious, fraudulent, clearly erroneous, or contrary to law." *Id.* ¶ 8.  A finding is clearly erroneous if it is "unsupported by substantial evidence." *Id.*

## IV.  ANALYSIS

### A.  The Superior Court Erred When It Determined that the OPA Had Jurisdiction to Review the CPO's Decision Not to Debar

[16]     SH presents two arguments that the OPA lacks jurisdiction.  SH points to 5 GCA § 5705's language, which restricts the OPA's authority to review decisions to debar, while here, the CPO issued a decision *not* to debar.  Appellant's Br. at 12-17 (June 13, 2024).  Additionally, SH argues that the OPA reviewed the debarment as part of a procurement appeal, which is not within the statutory framework for reviewing debarment petitions.  *Id.* at 9-11.  The Superior Court and the OPA concluded that the OPA has the authority to review decisions not to debar to avoid shielding the GSA and other debarring agencies from scrutiny.

[17]     However, we interpret the statute—based on its text, structure, and legislative history—as indicating that the OPA only has the authority to review debarments, not decisions not to debar. Additionally, 5 GCA § 5705 does not shield the CPO's decision not to debar from review.  The statute mandates that an agency deciding not to debar must consult the Office of the Attorney General ("OAG").  If the OAG disagrees with the agency's decision not to debar, it has

independent authority to seek a proper remedy, serving as a safeguard against potential government corruption.

### 1. Guam's Procurement Law

[18]    Guam has generally adopted the 1979 Model Procurement Code ("MPC").[2] *DMR*, 2013 Guam 27 ¶ 56 ("Title 5 Guam Code Annotated, Chapter 5 was adopted from the Model Procurement Code ('MPC'), and Guam's Procurement Law explicitly adopted the MPC's official comments as part of our own legislative history.").  Consistent with the MPC, the Guam Procurement Law grants the CPO[3] the authority to resolve three categories of pre-litigation controversies: (1) protested solicitations and awards under 5 GCA § 5425; (2) debarment or suspension under section 5426; and (3) contract and breach of contract controversies under section 5427.  Relevant in this case are the grants of authority under the first two categories of disputes: protests under section 5425 and debarment under section 5426.

[19]    Consistent with the MPC, the right to protest under section 5425 is limited to "[a]ny actual or prospective bidder, offeror, or contractor who may be aggrieved in connection with the method of source selection, solicitation or award of a contract . . . ."  5 GCA § 5425(a) (2005).  Guam has also adopted the MPC provision on debarment authorizing the CPO, "after consultation with the using agency and the Attorney General, . . . to debar a person for cause from consideration for award of contracts."  5 GCA § 5426(a) (2005).  However, Guam has expanded the authority of the CPO to hear debarment controversies beyond what is provided in the MPC.  Under the MPC, "[t]he

---

[2] The American Bar Association published a revised Model Procurement Code in 2000.  A.B.A., *The 2000 Model Procurement Code for State and Local Governments* (2000), https://www.americanbar.org/content/dam/aba/administrative/public_contract_law/pcl-connect/pcl-model-02-2000-code-procurement.pdf [https://perma.cc/T925-UNPL].  The 2000 revisions left the provisions governing debarment substantively unchanged.  *See id.* §§ 9-102, 9-507.

[3] Because this case involved the CPO, we focus on that position.  The Procurement Law also grants this authority to the Director of Public Works or the head of a purchasing agency, as may be applicable in a specific case.  5 GCA § 5426(a) (2005).

authority to debar pursuant to the MPC rests in the state attorney general (AG). The MPC lists two possible officials with delegated authority to debar contractors, namely, the chief procurement officer (CPO) or the head of a purchasing agency (HPO)." Cory A. Chipman, *Advocating for State-Level Debarment Systems: Lessons from the MPC and GAO*, 53 Procurement Law. 11, 11, 13 (Winter 2018) (footnotes omitted) (citing A.B.A., *The 2000 Model Procurement Code for State and Local Governments* § 9-102(1) & cmt. 1 (2000)). But in 1986, the legislature added a provision granting the CPO the authority to hear petitions from "[a]ny member of the public" seeking "action to debar or suspend." 5 GCA § 5426(f); Guam Pub. L. 18-044:5 (Nov. 14, 1986). Thus, under Guam's Procurement Law, a proceeding to debar may be instituted not only by the Attorney General or CPO, but also by any member of the public who files a petition to debar.

[20]    When debarment proceedings are instituted by the CPO under 5 GCA § 5426(a), the CPO "shall issue a written decision to debar or suspend" that "(1) state[s] the reasons for the action taken; and (2) inform[s] the debarred or suspended person involved of its rights to judicial or administrative review as provided in this Chapter." 5 GCA § 5426(c). When a member of the public petitions the CPO to take action to debar, "[a]n investigation of each petition shall be conducted promptly and a written report should be made of findings of fact and action taken." 5 GCA § 5426(f). In cases where a member of the public petitions the CPO to debar, the written report containing the findings of fact and action taken under subsection 5426(f) is not the same as a written decision to debar issued to the debarred person under subsection 5426(c). A written decision to debar must "inform the debarred . . . person involved of its rights to judicial or administrative review," 5 GCA § 5426(c), but subsection 5426(f) is silent on a petitioner's right to administrative or judicial review. "A decision under Subsections (c) or (f) of this Section shall be

final and conclusive, unless fraudulent, or an appeal is taken to the Public Auditor in accordance with § 570[5] of this Chapter." 5 GCA § 5426(e).[4]

[21]  The Public Auditor has "the power to review and determine de novo any matter properly submitted to her or him." 5 GCA § 5703(a) (2005). Section 5705 expressly provides: "The Public Auditor shall decide whether, or the extent to which, the *debarment or suspension* was in accordance with the statutes, regulations and the best interest of the government or any autonomous agency or public corporation, and was fair." 5 GCA § 5705(c) (2005) (emphasis added). Section 5705 also provides: "The aggrieved person shall file his/her appeal with the Public Auditor within sixty (60) days of the receipt of a decision under Subsection (c) of § 5426 of this Chapter." 5 GCA § 5705(b).

### 2. Sections 5703 and 5705 do not grant the OPA the authority to review a decision not to debar or to review the report made under subsection 5426(f)

[22]  SH argues that "[t]he Superior Court incorrectly assumed that matters not legislatively conferred to be within the Public Auditor's jurisdiction must be swept within Section 5703." Appellant's Br. at 12. It further argues that "[t]he plain language of Guam Procurement Law limits the authority to debar a contractor to the Chief Procurement Officer . . . with the concurrence of the attorney general and excludes any mechanism for appeal of a decision *denying* debarment." *Id.*

[23]  The OPA is a "creature[] of legislation," and its authority is limited to the powers delineated within its enabling statute. *Carlson v. Guam Tel. Auth.*, 2002 Guam 15 ¶ 9. Administrative tribunals have jurisdiction to entertain an appeal only if an appeal is prescribed by statute. *See Port Auth. of Guam v. Civ. Serv. Comm'n (Susuico)*, 2015 Guam 14 ¶ 12 (interpreting enabling

---

[4] There is a scrivener's error in the cross-reference of subsection (e). Section 5706 deals with Contract and Breach of Contract Controversies, while it is actually section 5705 that governs OPA review of debarments.

statute of Civil Service Commission to determine "whether the CSC had jurisdiction to entertain [employee's] appeal"); *see also Guam Fed'n of Tchrs. v. Gov't of Guam*, 2013 Guam 14 ¶¶ 68-73 (holding CSC lacked jurisdiction to entertain appeal). And we have consistently held that "statutes governing appellate jurisdiction are to be strictly construed." *People v. Natividad*, 2005 Guam 28 ¶ 1. Thus, the boundaries of the OPA's jurisdiction depend on our construction of sections 5703 and 5705.

[24]     Statutory interpretation always begins with the plain language of the statute. *Aguon v. Gutierrez*, 2002 Guam 14 ¶ 6. This court interprets statutes to give them "a meaning consistent with the plain meaning of the words used and the legislative intent." *People v. Quichocho*, 1997 Guam 13 ¶ 15. "In determining the plain meaning of a statutory provision, we look to the meaning of the entire statutory scheme containing the provision for guidance." *Amerault v. Intelcom Support Servs., Inc.*, 2004 Guam 23 ¶ 14. We make this determination based on the statute as a whole, looking at its language, broader context, and object and policy. *In re Est. of Leon Guerrero*, 2023 Guam 10 ¶ 45. "When the legislature enacts provisions of a uniform or model act without significant alteration, it may be generally presumed to have adopted the expressed intention of the drafters of that uniform or model act." *Heirs of Ellis v. Est. of Ellis*, 71 S.W.3d 705, 713 (Tenn. 2002); *cf. San Agustin v. Superior Court*, 2024 Guam 2 ¶ 16 ("Generally, when a legislature adopts a statute that is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the originating jurisdiction." (quoting *In re Est. of Leon Guerrero*, 2023 Guam 10 ¶ 35)).

[25]     The question here is whether the OPA's authority is limited to a debarment or if it extends to a decision *not* to debar or the written report containing the findings of fact and action taken under subsection 5426(f). We agree with SH that the statute does not provide a mechanism to

appeal an executive decision *not* to debar or the written report under subsection 5426(f).  Sections 5703, 5705, and 5426(f) do not grant the OPA express or implied authority to review decisions not to debar or to review a written report issued under subsection 5426(f).

### i. *There is no express authority for the OPA to review decisions not to debar under sections 5703 and 5705 or to review a written report issued under subsection 5426(f)*

[26]     The OPA's administrative review in procurement cases is limited to matters "properly submitted."  5 GCA § 5703(a).  The language of section 5705 limits the OPA's authority to decide whether the "debarment" followed the applicable laws.  Indeed, the OPA previously held that it only has the authority to review debarments—not decisions not to debar.  *In re Teleguam Holdings, L.L.C.*, OPA-PA-13-016 (Dec. & Order at 4, Jan. 7, 2014), https://www.opaguam.org/sites/default /files/13-016_decision_and_order_re_purchasing_agencys_motion_to_dismiss_for_lack_of_juris diction_2.pdf [https://perma.cc/DR8K-B695] ("The Public Auditor is limited to deciding whether, or the extent to which a **debarment** was in the accordance with the statutes, regulations, in the best interests of the government, and was fair.").

[27]     A written report explaining the findings of fact and action taken under subsection 5426(f) cannot be properly submitted to the OPA.  Similarly, a decision not to debar—regardless of how the proceeding was initiated—cannot be properly submitted to the OPA.  Subsection 5426(e) provides that decisions under subsection 5426(c) or subsection 5426(f) are final and conclusive, unless fraudulent or appealable in accordance with section 5705.  Subsection 5705(b), which applies to debarments, states, "The aggrieved person shall file his/her appeal with the Public Auditor within sixty (60) days of the receipt of a decision *under Subsection (c) of 5426* of this Chapter."  5 GCA § 5705(b) (emphasis added).  Furthermore, while a decision under subsection 5426(c) expressly provides that a debarred person has a right to administrative and judicial review,

subsection 5426(f) has no provision that expressly mentions a public petitioner's right to review. Thus, a person may appeal under section 5705 only if they are debarred or suspended in accordance with subsection 5426(c). We conclude that the plain language of the statutory scheme allows a debarred person to appeal when the CPO debars under subsection (c) of section 5426, but that no appeal will lie from a decision not to debar or from a report explaining the findings of fact and action taken under subsection 5426(f).

[28]     This interpretation is consistent with a reading of the Procurement Law as a whole. Mirroring the language of section 5705, section 5480 grants the Superior Court jurisdiction over a "person who is *subject to* a suspension or debarment." 5 GCA § 5480(b) (2005). However, the text of subsection 5480(b) does not grant the Superior Court jurisdiction over decisions not to debar. Similarly, subsection 5425(e) grants the OPA authority to review a "decision" regarding protest appeals. Including the term "decision" in subsection 5425(e) and excluding it from subsection 5705(c) indicates that the legislature intended the OPA's authority over debarment matters to be more limited than its authority over procurement protests.

[29]     The design of the 1979 Model Procurement Code, from which Guam's procurement statutory scheme is drawn, also supports our interpretation of the statute. The only other body with authority to debar is the Procurement Policy Office ("PPO"). 5 GCA § 5651(d) (2005). The commentary to the MPC, which constitutes the legislative history of the Guam Procurement Law, clarifies that "[t]he power to debar or suspend, with appropriate safeguards, is primarily entrusted to the Chief Procurement Officer . . . ." MPC § 12-302, cmt. The limited jurisdiction of the PPO is "supplementary" and is intended only for those situations "where it is desirable for an outside, independent agency to proceed with debarment or suspension." *Id.* This commentary confirms

that the MPC expressly committed the power to debar primarily to the CPO, and there is no express authority for administrative review of decisions not to debar.

### ii. There is no implied authority for the OPA to review a decision not to debar

[30] The OPA, relying on our holding in *DMR*, argues that section 5703 grants the Public Auditor an implied authority to debar. Because section 5703 directs the OPA to use its jurisdiction to "promote the integrity of the procurement process and the purposes," the Public Auditor reasons he must act whenever a contractor violates the ethical rules and the CPO chooses not to debar that contractor. Appellee's Br. at 25, 37-38 (July 29, 2024).

[31] In *DMR*, we held that the OPA had implied authority to appeal to the Superior Court as an aggrieved person under 7 GCA § 25104. *DMR*, 2013 Guam 27 ¶ 34. While we have long held that an agency's authority under its enabling statute may be express or implied, that authority must still be grounded in the statutory scheme. In *DMR*, the OPA could be properly characterized as an "aggrieved party" within the meaning of 7 GCA § 25104. *Id.* Since any aggrieved party can file an appeal to the Superior Court, the OPA had implied authority to appeal. *Id.* But when the CPO does not issue a written decision to suspend or debar under subsection (c), a petitioner cannot be a person "aggrieved" by "a decision *under Subsection (c)*." *See* 5 GCA § 5705(c) (emphasis added). Authority to hear an appeal after a written decision to debar is issued under subsection (c) does not imply authority to hear an appeal in the absence of such a decision. *Cf. Carl Corp. v. State, Dep't of Educ.*, 997 P.2d 567, 581 (Haw. 2000) ("[T]here is no 'written decision' on the subject of [contractor's] debarment which this court can review.").

[32] We are not persuaded that section 5703 enlarges the OPA's power in all cases when the integrity of the procurement process is potentially compromised by a decision not to debar. That reading of the statute would extend the OPA's jurisdiction to virtually every case when an executive

agency could have debarred a contractor but chose not to. But the statutory scheme provides that agencies have the discretion to not debar, even when there has been an ethical violation.

[33]     We find support for this view in the law of other jurisdictions. At least seventeen states have adopted portions of the MPC. *Alii Sec. Sys., Inc. v. Pro. Sec. Consultants*, 383 P.3d 104, 111 (Haw. Ct. App. 2016). Some of these jurisdictions provide no administrative review of debarment decisions, allowing a "debarred or suspended business" to jump straight to judicial review. *See, e.g.*, N.M. Stat. Ann. § 13-1-179 (West, Westlaw through 2025 First Reg. Sess. & 2025 First Spec. Sess.); N.M. Admin. Code 1.4.7.9(E) (Westlaw through N.M. Reg. Vol. XXXVI, Issue 21, Nov. 4, 2025). Others mirror Guam's adoption of the MPC. *See, e.g.*, S.C. Code Ann. § 11-35-4220 (Westlaw through 2025 Act No. 94). Others modify the MPC to explicitly limit administrative review to a "prospective bidder or proposer that wishes to appeal debarment." Or. Rev. Stat. Ann. § 279B.130(5) (West, Westlaw through 2025 Reg. Sess.). While others extend administrative review to a "governmental body aggrieved by a determination of the chief procurement officer" under the debarment statute. Haw. Rev. Stat. Ann. § 103D-709(a) (West, Westlaw through 2025 Reg. Session). But the OPA points us to no courts finding an implied authority for administrative review of a decision not to debar under any statutory scheme based on the MPC. And we cannot find any.

[34]     This is not a case where the Attorney General or some other government entity claims to be aggrieved by a decision not to debar. Although Minnesota has not adopted the MPC, in one of the few cases touching on the issue, the Minnesota Court of Appeals ruled that other contractors lacked standing to seek judicial review of an agency decision not to debar. *Mankato Aglime & Rock Co. v. City of Mankato*, 434 N.W.2d 490, 492-93 (Minn. Ct. App. 1989). Under Minnesota law, the Minnesota Department of Transportation "must" debar a business when one of the grounds

for debarment is "established at a hearing." *Id.* at 493 (quoting Minn. R. 1230.3400 (1987)). Despite the statute's mandatory language, the court held that another bidder could not compel the Department of Transportation to hold a hearing to determine whether there were grounds for debarment. *Id.* The court reasoned that "the purpose of the rule is to protect the due process rights of the debarred company, not the interests of business competitors." *Id.*

[35]     We find the reasoning of the Minnesota Court of Appeals to be persuasive. While any member of the public may petition the CPO to take action to debar, they may not appeal to the OPA the written report containing the findings of fact and decision under subsection 5426(f). The appeal process in section 5705 is designed to protect contractors from being erroneously debarred, not to give third parties the opportunity to appeal the written report containing the findings of fact and decision under subsection 5426(f).

[36]     The OPA argues that our holding will insulate executive agencies and contractors from judicial review. This concern is not trivial, but, ultimately, policy concerns cannot override the plain language of the statute. We are asked to square the legislature's amendment allowing petitions for debarment with what is otherwise a verbatim adoption of the MPC. Because the MPC only contemplates appeals by people aggrieved by a decision to debar or suspend, we conclude that the legislature did not grant petitioners the right to appeal the report made of the findings of fact and action taken when it added subsection 5426(f) but left section 5705 untouched. Any modification to the OPA's authority must go through the legislative process. Legislative history shows that the legislature has twice tried to expand the OPA's jurisdiction over such matters: Bill 224-32 and Bill 20-33. *See* Bill No. 224-32 §§ 3, 12 (2014); Bill No. 20-33 §§ 2, 11 (2015). Both times, the governor vetoed these bills.

**[37]** Title 5 GCA § 5426(a) requires that the CPO consult the OAG before they initiate a debarment. Subsection (a) requires the CPO to confer with the OAG after receiving a petition to debar under subsection (f), even when they decide not to debar. Doing so puts the OAG on notice that a contractor or agency potentially violated the law. The OAG may then investigate and pursue legal action as it deems fit.

### 3. When deciding procurement appeals, the OPA is a quasi-judicial tribunal of limited jurisdiction

**[38]** The Superior Court agreed with the Public Auditor that the OPA must have jurisdiction to review a decision not to debar. RA, tab 36 at 4 (Dec. & Order, Jan. 5, 2024). The Superior Court held that because the CPO had authority to debar, and the OPA reviewed decisions of the CPO *de novo*, the OPA must also have the power to debar. *Id.* Otherwise, the decision not to debar would be insulated from review. *Id.* at 5. The Superior Court's legal reasoning is unsupported by any authority and misunderstands the nature of *de novo* review. Standards of review determine the level of deference that a reviewing body gives to the decision below. *Sawyer v. Dep't of Workforce Servs.*, 2015 UT 33, ¶ 9, 345 P.3d 1253. However, the reviewing body can give deference only if it already has the authority to review. *De novo* review does not vest the OPA with jurisdiction if a decision not to debar is not "properly submitted" to the OPA. 5 GCA § 5703; *see also People v. Angoco*, 2006 Guam 18 ¶ 8 ("We have consistently held that this court's appellate jurisdiction is limited to those matters which the legislature permits us to review." (quoting *People v. Lujan*, 1998 Guam 28 ¶ 8)). And as discussed above, a debarment decision is properly submitted only if the CPO issued a written decision to debar under 5 GCA § 5426(c). Because the question of jurisdiction is logically and legally antecedent to the question of deference, the language in section 5703 does not enlarge the OPA's jurisdiction.

[39]　　The OPA argues on appeal that appellate review is appropriate for an "administrative error capable of repetition but evading review." Appellee's Br. at 18. At the administrative level, the Public Auditor held that when an issue is capable of repetition yet evades review, the OPA can assert jurisdiction over the claim through an exception to the general rule that there must be a live claim or controversy. RA, tab 44, Attach. 2 at 12 (OPA Dec., Apr. 27, 2021) (citing *Sloan v. Dep't of Transp.*, 666 S.E.2d 236, 240 (S.C. 2008)). Like the Superior Court's, the OPA's legal justification is misplaced.

[40]　　"A statute which creates an administrative agency and invests it with powers restricts it to the powers granted. The agency has no powers except those mentioned in the statute." *Leon Guerrero v. Moylan*, 2002 Guam 18 ¶ 18 (quoting *Gouge v. Davis*, 202 P.2d 489, 498 (Or. 1949)). We agree with the Connecticut Supreme Court that "[a]dministrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely [on] the validity of statutes vesting them with power and they cannot confer jurisdiction [on] themselves . . . ." *Kleen Energy Sys., LLC v. Comm'r of Energy & Env't Prot.*, 125 A.3d 905, 912 (Conn. 2015) (second and third alterations in original) (quoting *Wheelabrator Lisbon, Inc. v. Dep't of Pub. Util. Control*, 931 A.2d 159, 168 (Conn. 2007)).

[41]　　The OPA incorrectly conflates the constitutional and prudential limitations placed on courts with the scope of an administrative agency's authority to decide certain matters. *See Am. Fed'n of Gov't Emps. Nat'l Off. v. D.C. Pub. Emp. Rels. Bd.*, 237 A.3d 81, 86 (D.C. 2020) ("[J]urisdictional doctrines applicable to courts cannot be directly transposed onto administrative agencies. . . . [N]o matter how the term [jurisdiction] is used, the question 'is always whether the agency has gone beyond what [the legislature] has permitted it to do.'" (fourth alteration in original) (quoting *City of Arlington v. FCC*, 569 U.S. 290, 298 (2013)). The OPA is not a court. And the OPA is not given

broad authority to hear justiciable controversies. Even if a controversy is justiciable, the OPA must still have statutory authority to exercise its limited jurisdiction. *See United States v. Cortez*, 930 F.3d 350, 358 (4th Cir. 2019) ("When it comes to administrative agencies, the question of subject matter jurisdiction 'is more appropriately framed' as 'whether the agency actor . . . lacked statutory authority to act' or acted outside its 'authority to adjudicate.'" (citation omitted)).

[42]    This court "may reach the merits of a moot appeal if it is 'capable of repetition yet evading review.'" *Basil Food*, 2019 Guam 29 ¶ 12 (quoting *People v. Blas*, 2016 Guam 19 ¶ 17). Mootness is a justiciable concern that the judiciary has self-imposed. *See Town House Dep't Stores, Inc. v. Ahn*, 2000 Guam 32 ¶ 9 (articulating Guam's mootness doctrine by drawing on federal and state case law).[5] This court has the "authority to decide cases that are technically moot when those cases are functionally justiciable," *In re Req. of Leon Guerrero*, 2023 Guam 11 ¶ 33 (quoting *In re Guardianship of Ulloa*, 2014 Guam 32 ¶ 39), because the legislature has limited our authority to "justiciable controversies and proceedings," *id.* ¶ 20 (quoting 7 GCA § 3107(a)).

[43]    Regardless of whether the OPA is limited to hearing justiciable cases (whether by statute or as a self-imposed prudential rule), this fact has no bearing on whether the OPA has gone beyond what the legislature has permitted it to do in hearing procurement appeals. It does not matter that there may have been an "administrative error capable of repetition but evading review," because the OPA acted outside its authority to adjudicate. *See Am. Fed'n of Gov't Emps.*, 237 A.3d at 86; *Cortez*, 930 F.3d at 358. An exception to the mootness doctrine cannot be used to enlarge an

---

[5] This court's standing jurisprudence clarifies that "this court is not bound by the standing requirements applicable to federal courts of limited jurisdiction under Article III of the United States Constitution. We have nonetheless adopted traditional standing requirements." *Guam Mem'l Hosp. Auth. v. Superior Court (Comm. on Health & Hum. Servs.)*, 2012 Guam 17 ¶ 9 (citations omitted). Like standing, mootness is a self-imposed limitation that requires a threshold showing of a live dispute, such that courts and agencies are not issuing advisory opinions. *See In re Req. of I Mina' Bente Sing'ko Na Liheslaturan Guåhan*, 2001 Guam 3 ¶ 12 ("A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937))).

agency's jurisdiction.[6]  The legislature grants jurisdiction to the OPA.  *See* 48 U.S.C.A. § 1421g(c) ("The Government of Guam may by law establish . . . an Office of Public Auditor.").  Thus, whether the issue was "capable of repetition but evading review" is a different inquiry from whether the legislature granted the OPA jurisdiction.

[44]    Allowing an exception to a judicially self-imposed limit to supersede the legislature's choice about the OPA's jurisdiction would undermine the purpose of statutory jurisdiction and common law justiciability: to limit the unelected judiciary from interfering with the will of the legislature.  *See Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-79 (D.C. Cir. 1983) (Bork, J., concurring).

**B.  Protests and Debarments Are Distinct Under the Procurement Law**

[45]    SH contends that because Basil submitted a procurement protest instead of a petition for debarment, the matter was not "properly submitted" to the OPA as required by 5 GCA § 5703. Appellant's Br. at 9-11.  Because a decision not to debar or a written report under subsection 5426(f) cannot be properly submitted to the OPA, we need not address SH's argument that the OPA lacked jurisdiction because a petition to debar SH was not presented to the CPO in this case.  *See id.*  We agree with the sentiment that, without more, "[r]equesting debarment as a remedy cannot suddenly convert [a] Section 5425 protest of award into a Section 5426 petition to debar . . . ." *See id.* at 10.  Protests and debarments are distinct proceedings under the Procurement Law.

[46]    Although the conflating of a protest and a debarment may not necessarily be a jurisdictional defect, they are governed by distinct statutes that provide distinct remedies.  A protest is filed by "[a]ny actual or prospective bidder, offeror, or contractor who may be aggrieved in connection with the method of source selection, solicitation or award of a contract."  5 GCA § 5425(a).

---

[6] The OPA's position touches on a debate about whether justiciable concerns are distinct from jurisdiction. *See* Alan M. Trammel, *Jurisdictional Sequencing*, 47 Ga. L. Rev. 1099, 1111 n.43 (2013).

Generally, a protestor seeks to prevent the government from awarding a specific contract to a successful bidder. If the protest is not resolved by mutual agreement, the CPO must promptly issue a written decision stating the reasons for the action taken and inform the protester of its right to administrative and judicial review. 5 GCA § 5425(c).

[47]     But debarment refers to suspending a contractor's ability to bid on any government contracts for a specific period, up to two years, for Procurement Law violations. 5 GCA § 5426. Under the MPC, neither competing contractors nor the public may initiate a debarment proceeding; the decision is the prerogative of the CPO, in consultation with the Attorney General. However, under 5 GCA § 5426(f), "[a]ny member of the public may petition the Chief Procurement Officer . . . to take action to debar or suspend" a contractor. This petition triggers an investigation, and a written report of the findings must be issued. If the CPO decides to debar—whether on its own initiative or after receiving a petition—it must issue a written decision to debar stating the reasons for the action taken and informing the debarred person of their right to administrative and judicial review. 5 GCA § 5426(c).

[48]     The procedural requirements and the distinct nature of protests and debarments underscore the importance of treating them in accordance with their respective statutory guidelines. We have observed that "[t]o preserve a matter for appellate review, a party 'must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'" *In re Application of the People*, 2024 Guam 17 ¶ 38 (quoting *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023)). In the context of the Procurement Law, this requirement includes presenting to the CPO the procedure being invoked "with sufficient specificity and clarity to give the tribunal below a fair opportunity to rule on it." *See San Union, Inc. v. Arnold*, 2017 Guam 10 ¶ 33 (quoting *In re Vt. Yankee Nuclear Power Station*, 2003 VT 53, ¶ 13, 175 Vt. 368,

829 A.2d 1284). We need not decide whether combining a section 5425 protest and a section 5426 debarment request in the same document is a jurisdictional defect, but an aggrieved contractor must inform the CPO what procedure is being invoked.

[49]     A review of the administrative record shows Basil filed protests under section 5425, not a petition to debar under section 5426. Basil's first protest does not mention potential debarment of SH. *See* RA, tab 46 (Submission R., July 26, 2024), Attach. 1 (Notice of Procurement Appeal, Dec. 16, 2019), Ex. I at 1-4 (Protest, Nov. 22, 2019). The only mention of debarring SH in Basil's second protest is in its prayer for relief. *See* RA, tab 46, Attach. 2 (Notice of Procurement Appeal, Feb. 27, 2020), Ex. F at 5 (Protest, Feb. 7, 2020). Basil failed to "unequivocally put its position" before the CPO "at a point and in a manner that permits the [agency] to consider its merits." *See In re Application of the People*, 2024 Guam 17 ¶ 38 (quoting *In re Niaspan Antitrust Litig.*, 67 F.4th at 135). Merely requesting debarment as a remedy in a procurement protest is insufficient to give the CPO a fair opportunity to rule on debarment. *See San Union*, 2017 Guam 10 ¶ 33. And such a fleeting reference certainly does not entitle a contractor to administrative review.

[50]     This court has not ruled on whether debarment proceedings can be initiated through a protest filing, but it has established precedent favoring "substance over form" when evaluating compliance with procedural requirements. *DMR*, 2013 Guam 27 ¶¶ 29-30. In *DMR*, this court found that the Superior Court had jurisdiction when the plaintiff filed a "Petition for Judicial Review" rather than initiating a civil action in the Superior Court as required by statute. We reasoned that the statute's requirement was to ensure that the adverse party received proper notice, which the petition accomplished. *Id.*; *see also Town House Dep't Stores, Inc. v. Dep't of Educ.*, 2012 Guam 25 ¶¶ 24-29. Without concern over notice, we found no reason to strip the trial court

of jurisdiction for a formalistic defect. *DMR*, 2013 Guam 27 ¶¶ 28-29 (citing *Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 57).

[51]    However, as the facts here illustrate, the OPA converting a protest into a petition to debar is a different matter. Protests and petitions to debar are distinct procedures that carry distinct remedies. Because Basil's request came as a protest, which the CPO denied, the CPO never undertook the steps outlined in section 5426. Contrary to the OPA's arguments, the OPA's jurisdiction is not analogous to the Superior Court's jurisdiction in *DMR*. The OPA is not a court. When we held that we favor substance over form, we did so by refashioning a petition for judicial review as a civil action. *DMR*, 2013 Guam 27 ¶ 29. We recognized that the petition for judicial review is a judicially-created vehicle, one which we developed ad hoc. *Id.* ¶¶ 28, 30 (citing *Carlson v. Perez*, 2007 Guam 6 ¶¶ 61, 64).

[52]    Section 5426 is a legislatively-enacted procedure for bringing a debarment action. The OPA is not empowered to alter the statutory procedure in the same way we are empowered to amend our procedure by rule and judicial decision. *See In re Application of the People*, 2024 Guam 17 ¶ 55 ("Because a petition for judicial review is a judicially created vehicle, the Superior Court can designate any suitable process or mode of proceedings that best aligns with the spirit of the grand jury process." (citation modified)); *see also San Agustin*, 2024 Guam 2 ¶ 50 (exercising our supervisory authority to change procedure for serving a statement of objection). And while we, for purposes of judicial economy, allow a writ to be refashioned as a civil action, the OPA's review of debarment proceedings must follow the statutory procedure outlined in the Procurement Law.

[53]    The OPA did not follow that procedure in this case. While the OPA made efforts to comply with the Administrative Adjudication Law and the process outlined in section 5426, such action

was beyond its legal authority. Section 5426 imposes the procedural requirements and authority to issue a debarment solely on the CPO. The OPA cannot apply section 5426's requirements to itself and satisfy a statute that does not grant the OPA any authority.

## V. CONCLUSION

[54]   We hold that the Superior Court erred when it determined that the OPA has jurisdiction to review a decision not to debar. Because the OPA lacked subject matter jurisdiction, SH's other claims are moot. We therefore **REVERSE** and **REMAND** for further proceedings not inconsistent with this opinion.

/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
ROBERT J. TORRES
Chief Justice